WHITMAN *v.* THE STATE, on the Relation of HEMMINGER.

BASTARDY.—*Evidence.*—Where, in a prosecution for bastardy, the prosecuting witness testified that the child was begotten in a certain month or the next following month, and could not be any more definite as to the time, and it appeared in evidence that about the date at which the child was probably begotten, allowing the ordinary period of gestation, being about the first of the former month designated by her, she had sexual intercourse with several men, and it was not shown that there was anything peculiar in one of the connections or attending circumstances, which enabled her to determine that the child was begotten at that time;

*Held,* that the evidence was not sufficient to authorize a finding that the defendant was the father of the child.

APPEAL from the Harrison Circuit Court.

PER CURIAM.—This was a prosecution for bastardy. There was a trial by the court, a finding that the defendant was the father of the child, a motion for a new trial overruled, and judgment charging the defendant with the maintenance and education of the child.

The reason for the motion for a new trial was, that the finding of the court was contrary to law, and not sustained by the evidence. All the evidence is put in the record by a bill of exceptions.

The only error assigned is, that the court improperly refused to grant a new trial on the application of the defendant.

As we think the circuit court should have granted a new trial, we will set out the evidence in the case, that the ground of our opinion may appear.

*Mary A. Hemminger,* the prosecuting witness, swore, that she was nineteen years old, and unmarried, was delivered of a bastard child on the 3d day of June, 1869, which was then alive, and that the defendant was the father of the child; that it was begotten on the porch, at her father's house; that she had no connection with any body else either in September or October, 1868; that she was examined under oath as a witness in a bastardy suit commenced by her against this defendant about the 1st day of April, 1869, before Esq. Sipes.

Remembered of having testified, at that time, that her child was begotten either in the month of September or October, 1868. She also testified then that some other men besides the defendant had sexual intercourse with her during those months, but at that time she did not know the meaning of sexual intercourse. She admitted that she was asked if these other men did not do the same thing to her that the defendant did when the baby was begotten; that she might have answered yes, for she was scared and did not know exactly what, or all that she said. She did say at that time that Paris Totten and Elijah Edwards had connection with her in September or October, 1868, but she thought connection meant to keep company with her. Now states that she did not know the meaning of the question asked her. Does not remember now that she admitted at Sipes' that Conrad Whitman, a brother of the defendant, had sexual intercourse with her twice during the last fall. Does not remember of meeting him in the woods, and did not say that he had connection with her at the school house; that defendant had been keeping company with her for two years. Here plaintiff rested.

*Lawson H. Sipes*, the justice of the peace before whom the other case was tried, on behalf of defendant, says: on that occasion the prosecuting witness testified that the defendant was the father of the child, or would be when it was born; that four or five other young men had sexual intercourse with her in September and October, 1868; and that her child was begotten in September or October, 1868. He then thought that she fully understood the question put to her, because her mother, who was present, told the defendant's attorney that she did not understand the meaning of the words he used in asking the questions, and the attorney then changed the language, and he thought anybody could understand him; she still answered the same way. He then found for the defendant. Although on the examination before him he thought she understood the questions, yet afterwards, on the examination before Esq. Utz, he had his doubts, and still has his doubts. Before him she admitted

having had connection with Leander Adams and Whitman and Totten, but denied having had connection with Edwards.

*Henry B. Utz.* Was at the trial before Sipes; the prosecuting witness "sort of" admitted having had connection with other men, but somehow he thought she did not admit it. He thought she answered through fear. The questions, however, were plainly put, but he thought she would have answered yes to anything. He did not think she understood the questions.

*Hamilton Seacat.* Before Esq. Sipes, the prosecuting witness answered yes to some of the questions whether she had connection with other men, and as to some of them she denied it.

*Elijah Edwards.* About the 1st of September, 1868, he saw his brother, Reuben Edwards, have carnal connection with the prosecuting witness, at her father's house, on the porch, at night. She was lying on the porch floor. He also had carnal connection with her himself the next week after that, on the porch.

*Paris Totten.* Went to the house of the father of the prosecuting witness one night; had heard there was to be a peach cutting there; it was about the 1st of September, 1868; was there about two hours, and during that time he had carnal connection with the prosecuting witness, on one end of the porch, while his brother was sitting at the other end of the porch with her sister. Heard her admit at Esq. Sipes' that she had had carnal connection with Conrad Witman and Leander Adams. Here the defendant rested.

*Catharine Hemminger.* Is the mother of the plaintiff, recollects the time when Paris Totten and another young man came to their house. They were not on the porch more than fifteen minutes, and during that time the door was open, and a light standing on the bureau, which shone out on the porch all the time; they stood right in the door, and did not go away from it. He could not have had intercourse with her that night. At the trial at Esq. Sipes' her daughter did not

understand the questions put to her about connection with other men.

This was all the evidence given in the cause.

There is one fact about which there seems to be no controversy; and that is, that the child was born on the 3d day of June, 1869. Counting back from this time the ordinary period of gestation would fix the date at which the child was probably begotten at about the first of September, 1868. Conceding, as we think must be conceded, that she had sexual intercouse at that time with four or five different men, the question arises whether she could say which of them was the father of the child. If there was anything peculiar in one of the connections or attending circumstances, which enabled her to say that at that particular time the child was begotten, that peculiarity or those circumstances are not shown in the evidence. On the other hand, the testimony of the prosecuting witness herself excludes the idea of any such thing. She swore that the child was begotten in September or October, 1868, and could not be any more definite as to the time. It is quite evident that the testimony of the prosecuting witneess, standing alone, must have been very unsatisfactory. She so fully admitted having had intercourse with four or five persons about the time when the child must have been begotten, that the justice of the peace who tried the first case concluded that she did not know who was the father of the child, and dismissed the case. The questions put to her on that occasion, not only before, but especially after, the suggestion by her mother that she did not understand them, were such as could hardly have been misunderstood by her.

Where the prosecuting witness has had sexual intercourse with so many men, near the time when the child was begotten, that she cannot know which of them is the father of the child, the defendant should be acquitted. This rule is recognized by several cases in this court, but has not been applied in any one. See *O'Brian* v. *The State, &c.,* 14 Ind. 469; *Townsend* v. *The State, &c.,* 13 Ind. 357. In Wharton and

Stille's work on Medical Jurisprudence, § 305, it is said, "In an indictment for bastardy the mother will not be permitted to decide which of the connections about the same time was the operative cause of conception. The organs of conception, like those of digestion, perform their appropriate offices without the volition of the female. She is not conscious, at the moment of the occurrence, of what has taken place. It is only by *inference* that she can fix the paternity of her offspring. If her intercourse has been confined to one individual, there is no difficulty in drawing a correct conclusion from the premises. But if she has exposed herself to the embraces of several, at or about the time she became pregnant, she has placed it out of her power to draw any safe conclusions on the subject. Where causes are shown to exist, each of which is adequate to produce the effect, and there are no circumstances to determine the mind in favor of either, the true cause must necessarily remain uncertain." Reference is made to *Com.* v. *Fritz*, 8 P. L. J. 43, and *Com.* v. *M'Carty*, 4 *Id.* 130 and 140.

When all the evidence in the case is considered, as we are in the habit of considering evidence in relation to other questions of fact, it seems to us to leave the paternity of the child in too much doubt to warrant the court in fixing it upon the defendant.

No doubt, circumstances might exist which would enable the female to determine which of two or more connections at about the time of conception was the one producing pregnancy. But, as we have already said, no such circumstance is shown in this case.

The judgment is reversed, with costs against the relator, and the cause remanded.

*S. K. Wolfe* and *A. Stephens*, for appellant.