LIBERTOWSKI *v.* HOJARA.

[No. 20,595. Filed August 3, 1967. No petition for rehearing filed.]

*Isadore D. Rosenfeld* and *Patrick Brennan,* both of South Bend, for appellant.

*Joseph D. Anderson* and *Patrick & Anderson,* both of South Bend, for appellee.

Cook, J.—Appellee brought this action pursuant to the provisions of the Children Born Out of Wedlock statute (Acts, 1941) (Burns' Indiana Statutes §§ 3-623 to 3-658), seeking to have appellant adjudged the father of her child. Appellee's original petition also asked that appellant be required to pay childbirth expenses, support of such child, and attorney fees, all as provided in the statutes referred to above.

Both parties waived trial by jury and the trial court after submission of evidence found that appellant was the father of appellee's child. The court's findings also ordered appellant to pay $10.00 per week toward the support of such child, together with enumerated childbirth expenses. Upon a showing that appellant was unable to post a $5,000.00 security bond pursuant to Burns' § 3-643, judgment followed the findings and also imposed a one year sentence in the Indiana State Farm, which sentence was suspended and appellant was placed under the supervision of an adult probation officer for a period of one year.

Appellant filed a timely motion for a new trial, alleging that, "the decision of the court is not sustained by sufficient evidence; the decision of the court is contrary to law; and, the decision grants excessive damages."

Appellant also filed a motion to modify the judgment alleging that the order for support is excessive and that Burns' § 3-643, which permits a sentence for a determinate period of not more than one year in jail on failure to post a security, is unconstitutional, as authorizing imprisonment for debt.

The trial court overruled appellant's motion for a new trial and also overruled his motion to modify the judgment. These actions of the trial court are assigned as errors in this court.

It should be noted that the judgment of the trial court was entered on December 9, 1965. This appeal was not fully briefed until January 3, 1967, and since that date we have heard oral arguments of counsel.

We would be warranted in holding the issue of appellant's suspended sentence is not now justiciable because, where there is a suspension of a sentence of imprisonment, unless revoked, a defendant is entitled to a discharge at the end of the time for which he was sentenced. *Rode* v. *Baird, Sheriff* (1925), 196 Ind. 335, 144 N. E. 415.

We believe the rule of *Rode* applies with equal force to a sentence imposed in a proceeding under the Children Born Out of Wedlock statute.

In any event, we find no basis for appellant's argument that Burns' § 3-643 is unconstitutional as being violative of Article I, Section 22 of the Indiana Constitution, which provides in part "and there shall be no imprisonment for debt, except in case of fraud." The rule is well settled in this State that the constitutional prohibition applies only to debts arising out of *contract* and that a statute such as the one which we have under consideration is constitutional. *Lower* v. *Wallick* (1865), 25 Ind. 68; and the decisions which follow *Lower,* namely: *Ex Parte Teague* (1872), 41 Ind. 278; *Reynolds et al.* v. *Lamount* (1873), 45 Ind. 308; *Turner* v. *Wilson* (1874), 49 Ind. 581; *McIlvain* v. *The State, ex rel. Emery* (1882), 87 Ind. 602; *Holderman* v. *Thompson, Sheriff* (1885), 105 Ind. 112, 5 N. E. 175.

Appellant would have us reject the reasoning of *Lower* v. *Wallick, supra,* and adopt views of *Byers et al.* v. *The State ex rel. Hutchison* (1863), 20 Ind. 47, which held the provisions of the paternity Act then in force unconstitutional and in violation of Article I, Section 22 of the Indiana Constiution, as being imprisonment for debt. We are not so inclined. In *Lower* our Supreme Court expressly overruled *Byers* and said:

> "It is unimportant, in this connection, to inquire whether the bastardy act is a penal statute. It will hardly be pretended that the liability under that act is a debt created by contract, either express or implied. The obligation of the father to maintain his children is founded in nature, and not in contract."

Where a decision such as *Lower* establishes a rule of statutory construction consistent with constitutional provisions our courts will depart from it with extreme reluctance; they will indeed tenaciously adhere to it, unless driven from it by the highest and strongest considerations of justice. Burns' § 3-643

does not infringe upon the Constitution of Indiana or the rights guaranteed under it.

Appellant attacks the validity of other sections of the "Out of Wedlock" statute. He particularly argues invalidity of Burns' §§ 3-644 and 3-645 which gives the court power to adjudge the father in contempt when default is made under the terms of the original judgment. Judge Jasper examined these statutory provisions as to constitutionality and found them valid and enforceable. *Curry* v. *Maynard* (1948), 227 Ind. 46, 83 N. E. 2d 782.

Appellant's second contention is that the trial judge erred in fixing the amount of support, in that the court did not consider appellant's ability to earn income in the future and further that there was insufficient evidence upon which to base an order as to the needs of the child.

There was evidence that appellant was unemployed as a result of physical injury sustained at his last employment but there was no evidence that his injuries were of such a nature as to prevent him from obtaining gainful employment. The evidence was meager as to the child's needs, although the evidence was undisputed that it was necessary for the child to have special medical treatments, costing $5.00 per week. In *Barkey* v. *Stowell* (1946), 117 Ind. App. 162, 70 N. E. 2d 430, this court stated the rule applicable to determination of amount of support in the following language:

> "It has been the practice in this state, immemorially, for the judge in bastardy proceedings to hear evidence or not, as he deemed necessary, upon the subject of the amount to be awarded to be paid by the defendant for the support of the child, and in the absence of abuse of discretion, the Appellate Court will not interfere with the finding or judgment as to the amount to be paid."

We believe the trial judge exercised his discretion, in this matter, fairly and with restraint.

Appellant further contends that there "is not one iota of credible evidence to sustain the finding that appellant was the father of the child." As a corollary appellant argues that appellee did not produce any corroborating testimony. Because of the illict relationship (which the trial court found to exist) between appellant a married man 22 years of age and appellee an unmarried woman 20 years of age, a dearth of witnesses corroborating or otherwise is understandable. Burns' § 3-638 declares that "both the mother and the alleged father shall be competent to testify." But the alleged father cannot be compelled to testify. The weight to be given such testimony should be judged by accepted standards of credibility applicable to any interested party to litigation.

Appellant categorically denied that he is the father of appellee's child. He testified that he first "dated" appellee in the latter part of August, 1963, and continued "dating" her until sometime in December, 1963. They did not see each other for six to eight weeks. Then, as before, unfettered by the bonds of matrimony, appellant resumed his pursuit of appellee, which obviously was reciprocated. On this occasion appellant testified that "an effort was made to patch things up." During February and March, 1964, appellant "dated" appellee "steady". It was in February, 1964, that appellee became pregnant.

Appellee testified on cross examination that she was not the aggressor; that "it was just a natural thing that just happened." Appellant testified that he did not have sexual relations with appellee at any time. However, it need not be supposed that appellant like Joseph when his continence was challenged by lascivious Mistress Potiphar, "left his garment in her hand, and fled, and got him out." Appellant returned to appellee's apartment again and again.

Appellant states in his brief that this is the kind of a "case in which the courts have so frequently said, the charge

is easy to make but difficult to disprove." Appellant does not favor us with a citation of authority and we are not conversant with the juristic philosophy upon which he relies. Burns' § 3-658 (Acts 1953) permits either party to ask for and be granted a blood grouping test, by a duly qualified physician, of the mother, her child and the alleged father; and the results of such tests may be received in evidence only in cases where definite exclusion of the alleged father is established. Appellant did not request such a test, and he is not prejudiced by his failure so to do. However, he did eliminate one possible avenue of escape from the charges made against him by not availing himself of scientific proof. Without such proof the trial court was confronted with the sworn statements of appellant opposed to the sworn statements of appellee; nothing more.

Without such scientific evidence of high probative value, the rules of evidence relating to proof of paternity have not changed much since our judicial ancestors threw witches into a New England pond and judged them according to whether they sank or swam. Appellee made it to shore by the standards which each of the parties chose to follow.

Filiation statutes such as the ones under consideration are in the nature of police regulations. The only penalty which the law imposes on the putative father for his transgression is to enforce upon him the duty of making provision for the proper care, maintenance, education, protection, support and opportunities of his child the same as children born in wedlock. Burns' § 3-623.

The record discloses sufficient evidence to sustain the trial court's decision as to paternity. To hold otherwise would require us to weigh the evidence, which we do not do.

Appellant directs our attention to that part of the judgment which ordered him to "pay all the pre-natal and post-natal expenses incident to the birth of said child," without fixing a sum certain. Appellant says there is no limit as to what

might be considered "post-natal expenses." The evidence is undisputed that medical bills are in the sum of $125.00 and the hospital bill is in the sum of $180.00.

The judgment is affirmed and the trial court is directed to modify the judgment by ordering appellant to pay the expenses incident to the birth of said child in the sum of $305.00

Judgment affirmed when modified as ordered.

Pfaff, C. J., Bierly and Smith, JJ. concur.

NOTE.—Reported in 228 N. E. 2d 422.