CARPENTER *v.* GOODALL.

[No. 268-A-26. Filed February 24, 1969. No petition for rehearing filed.]

*Taylor L. Baker, Jr.*, Indianapolis, for appellant.

*Noble R. Pearcy*, Prosecuting Attorney, *Stanley B. Miller*, Chief Counsel, for appellee.

LOWDERMILK, P. J.—This is an appeal from a paternity suit which was filed by the petitioner-appellee, by her next friend, against the defendant-appellant in the Marion County Juvenile Court, pursuant to the provisions of the Children Born Out of Wedlock Statute, Burns' Indiana Statutes, §§ 3-623 to 3-658, seeking to have appellant adjudged the father of her child. Appellee's original petition also asked that appellant be required to pay expenses of childbirth and support of the child, all as provided in the statute referred to above.

This cause of action was tried before the court without the intervention of a jury and the trial court, after hearing the evidence, found that appellant was the father of appellee's child. The court also found that appellant should pay $10.00 per week toward the support of said child, together with $104.50 childbirth expense to the Marion County General Hospital.

Appellant filed a timely motion for rehearing, as provided by the statute, which was overruled by the court. The court's overruling of the motion for rehearing is assigned as error in this court.

Under appellant's first two specifications of error he argues that the decision of the court is not sustained by sufficient evidence, and that the decision of the court is contrary to law in that there was no evidence of probative value in-

troduced to establish that the appellant was the father of appellee's child. Inasmuch as both of these specifications concern the same issue, they will be considered together for purposes of this opinion.

The facts most favorable to the appellee are that the parties hereto had gone to grade school together and had known each other for a number of years; that on Saturday night, April 6, 1963, appellant was at the appellee's home with other young people, where they visited and watched television until bedtime and the guests, including appellant, left. The appellee retired to an upstairs bedroom and shortly thereafter the appellant made entrance into her bedroom from an outside stairway, through an unlocked door. Appellee was 15 years of age at the time and before the act of sexual intercourse took place the parties discussed pregnancy, and appellant told the appellee that "if I had intercourse with him he would take care of the child, if anything happened to me, and he would marry me. I thought he liked me and I liked him, so I went on and had intercourse with him." The intercourse lasted about twenty minutes and appellant then left for home. About a month later appellee missed her monthly period. She told appellant about this but he told her she had better get somebody to do something about it because he wasn't going to take care of the baby. Appellee then wrote a letter to appellant and gave it to appellant's sister at school to deliver to him. This was about three or four months after the act of sexual intercourse. Then, in November or December, appellant came to appellee's house and told appellee's mother that he knew it was his child and he was going to go ahead and take care of that child.

There is no evidence that appellee had sexual intercourse with anybody else during this period, nor was there evidence that she had had sexual intercourse with any man prior to April 6, 1963, the alleged date of conception.

The baby was born on January 4, 1964, at the Marion County General Hospital.

Appellant denies being the father of the child and the date of the conception, but does admit that he had sexual intercourse with appellee on two different occasions, about a week apart, and which dates he gives as the middle or last of October, 1962, and a week later at his mother's home when his mother was asleep.

It is understandable that there were no witnesses to testify as to the actual act of sexual intercourse except appellant and appellee, as it has been since Eve became modest in the Garden of Eden that acts of intercourse between the sexes are ordinarily performed in privacy and to the exclusion of the prying eyes of the curious.

An examination of the facts as hereinbefore stated discloses that there was sufficient evidence of probative value to sustain the finding of the trial judge that the appellant is in fact the father of appellee's child. To hold otherwise would require us to weigh the evidence, which we do not do, as it was within the province of the trial court to determine any conflict therein. *Caine v. Keller, etc.* (1958), 128 Ind. App. 511, 149 N.E. 2d 845; *Libertowski v. Hojara* (1967), 141 Ind. App. 439, 228 N. E. 2d 422.

> "In this connection it must be remembered that the trial court had a better opportunity for weighing the evidence than we can have with only the printed record before us; it saw the parties and witnesses face to face and heard them testify; it observed their manner and demeanor while on the witness stand and therefore was better able to determine whether the appellee had sustained the burden of showing that the appellant was the father of her child." *Barkey v. Stowell* (1947), 117 Ind. App. 162, 70 N.E. 2d 430.

Appellant next contends that the findings of the trial court were contrary to law because they included a special finding not authorized by law and which special finding necessarily involved the giving of active consideration to a matter of

physical resemblance between the appellant and the subject child. This contention is brought about by the fact that the trial court, in securing information during the trial to complete a birth certificate in event the appellant was adjudged the father of appellee's child, asked the race of the parties and made his finding of the race of both appellant and appellee.

Although Acts 1941, ch. 112, §27, p. 301, § 3-649, Burns' 1968 Repl., neither authorizes nor requires information as to the ancestries of the parties or of the child in a paternity case, there is a requirement on the part of the trial court to file a certificate with the Board of Health and which certificate includes that information.

While appellant's failure to make objection to the questions propounded by the court relative to the race of the parties constitutes a waiver of any error asserted, it is appropriate to note that appellant does not and cannot show such questions, answers or findings in any way prejudiced him. It is preposterous to assume that because the court asked, for purposes of the record, a question the answer to which was obvious, that such fact was considered by the court as bearing upon the issue of paternity. Appellant assumes that the court considered the matter of "race" as a matter of "physical similarity". The record does not support such assumption. To the contrary, the record clearly indicates that the court sought the information relative to race solely for the purpose of completing vital statistics information.

Appellant contends that the motion of the Marion County General Hospital to intervene was filed and the record made without his knowledge. It is true that the motion does not bear the certificate of the attorney for the hospital that all attorneys had been forwarded a copy of the same by regular United States mail, or by serving a copy personally, before the same was filed, as required by Rule 1-16, Rules of the Supreme Court of Indiana, 1967 Re-

vision. However, the record discloses that the appellant did not object to the intervention of the Marion County General Hospital, and the appellant having failed to timely object and file motion to strike out the petition to intervene because of Marion County General Hospital's failure to notify all attorneys of record before the motion was filed, thereby waived his objection and cannot, at this time, be heard to complain. *Jurdzy v. Liptak* (1962), 243 Ind. 1, 180 N. E. 2d 530.

In appellant's motion for rehearing he sets out that there was an irregularity in the proceedings in which the defendant was prevented from having a fair and impartial trial, in that appellant filed a written petition for a blood test and the same was granted and all parties submitted to the blood test; that said results of the blood test were not introduced into evidence and it became a part of the court's file for the court to see and examine on September 20, 1967, which was before the trial of the cause.

Acts 1953, ch. 161, § 1, p. 575, § 3-658, Burns' 1968 Repl., provides as follows:

"In an action to determine who is the father of any child, the court, on motion of either party, shall order the mother, her child and the defendant to submit to one or more grouping tests by a duly qualified physician, to determine whether or not the defendant can be excluded as being the father of the child, and the results of such tests may be received in evidence, but only in cases where definite exclusion is established."

This statute gave the appellant the right to ask for the blood grouping test and the appellee cooperated by presenting herself and her child to the doctor, along with the appellant, for the test after she was ordered by the court so to do. It is true, as evidenced by the record in this cause, that the doctor sent his report back to the court, which was not necessary and which practice this court does not commend, as the doctor should send the report of his findings to the adult parties submitting to the test, or

their attorneys. However, for this court to hold that the trial court in this cause was prejudiced by seeing a medical report on a blood grouping test which did not exclude the appellant and which could not be introduced in evidence would require gross speculation to the effect that the trial court was incapable of distinguishing between admissible and inadmissible evidence, and that he considered inadmissible evidence in reaching his decision. There is no showing that the blood test in any way influenced the court's findings and judgment. The record shows to the contrary.

Finding no reversible error, the judgment is hereby affirmed; costs taxed against appellant.

Judgment affirmed.
Carson, Cooper and Sullivan, J. J., concur.

NOTE.—Reported in 244 N. E. 2d 673.