BEAMAN v. HEDRICK, B/N/F

[No. 269 A 31. Filed March 11, 1970.]

*Lawrence H. Hinds, Hinds & Davis,* Indianapolis, and *Daniel S. Harrigan, Bayliff, Harrigan & Cord,* Kokomo, for appellant.

*Donald J. Bolinger, Bolinger & Zirkle,* Kokomo, for appellee.

SULLIVAN, J.—On May 9, 1968, the Howard Circuit Court, without jury, determined that appellant was the father of a child born to appellee on June 16, 1967. The court entered judgment against appellant and ordered him to pay the hospital, doctor and drug bills, together with attorneys' fees and $12.50 per week for the support of said child.

By reason of our decision in this cause we consider only the contention of appellant that the decision of the trial court is not sustained by sufficient evidence. We are well aware that a decision of a trial court may be reversed for insufficiency of the evidence, if, and only if, there is no substantial evidence of probative value to support that decision. *Houser* v. *Board of Commissioners of the County of DeKalb* (1969), 252 Ind. 301, 247 N. E. 2d 670; *Winkler* v. *Winkler* (1969), 252 Ind. 136, 246 N. E. 2d 375; *Irons* v. *Irons* (1961), 242 Ind. 504, 178 N. E. 2d 156. Compare *Matis* v. *Yelasich* 1956, 126 Ind. App. 287, 132 N. E. 2d 728, wherein the trial court's judgment in favor of the putative father was affirmed and the court treated at great length

its inability to weigh the evidence. See also *Hooley* v. *Hooley* (1967), 141 Ind. App. 101, 226 N. E. 2d 344, (to the same effect.) We further recognize that circumstances or evidence which would justify a different conclusion than that reached by a trial court does not permit the Appellate Court to substitute its judgment for that of the trial court. *Chaleff* v. *Chaleff* (1969), 144 Ind. App. 438, 246 N. E. 2d 768. However, judgments cannot rest upon mere guess, conjecture, surmise, possibility or speculation. *Hunnicutt* v. *Boughner* (1967), 141 Ind. App. 669, 231 N. E. 2d 159; *Haney* v. *Meyer* (1966), 139 Ind. App. 663, 215 N. E. 2d 886. Upon appellate review the standard by which the sufficiency of the evidence is measured is that such evidence must have the fitness to induce conviction; it must be adequate to support a conclusion in the mind of reasonable persons. *McCague* v. *New York, Chicago & St. Louis R. R.* (1947), 225 Ind. 83, 71 N. E. 2d 569; *Haney* v. *Meyer, supra; Burke* v. *Burke* (1963), 135 Ind. App. 235, 191 N. E. 2d 530.

Paternity actions are civil in nature and the putative father must be proved to be such only by a preponderance of the evidence. *Thomas* v. *Farr* (1965), 137 Ind. App. 269, 207 N. E. 2d 650. The mother of the child or her representative, however, must, without question, carry that burden of proof. *Hooley* v. *Hooley, supra; Matis* v. *Yelasich, supra.*

Despite the unquestioned public policy consideration in assuring economic support to illegitimate children by the father of such child, that policy consideration cannot blind us to the just and proper requirements of evidentiary proof in such matters. Because of the ease with which one may be accused and found to be the father of an illegitimate child such determination must necessarily rest upon more than mere possibility. *Opp* v. *Davis* (1962), 133 Ind. App. 365, 179 N. E. 2d 298.

The only evidence of probative value which could be deemed

to support the trial court's decision here is to the effect that sexual intercourse occurred between appellant and appellee, for the first time, on November 26, 1966, and no contraceptive was used; that there was a total absence of credible evidence of intercourse by appellee with any other person at any time; that the mother and grandmother of the child testified concerning the absence of fully developed finger or toe nails on the baby; that the baby was born on June 16, 1967; and, that there was a medical *possibility* that a gestation period of 202 days could produce a seven pound child, 19½ inches in length.

Under the principles of appellate review hereinabove stated we disagree that such evidence is sufficient to support the decision of the trial court.

In this cause, the physician who treated appellee and who delivered the baby, testified in great detail concerning medical facts in general and concerning this pregnancy and delivery in particular. The testimony of a trained physician who has examined and treated a patient concerning matters peculiarly within the medical realm cannot be controverted by lay opinion or by judicial speculation or inference. *Western & Southern Life Insurance Co.* v. *Danciu* (1940), 217 Ind. 263, 26 N. E. 2d 912.

The human gestation period is neither absolute nor is it controlled by legislative or judicial fiat. *Benham* v. *State ex rel. Richardson* (1883), 91 Ind. 82. A particular period of gestation, however, is generally governed by the medical testimony in that particular case. Anno. 104 A.L.R. 84 at 85.

Unlike our recent decision in *Carpenter* v. *Goodall* (1969), 144 Ind. App. 134, 244 N. E. 2d 673, the evidence here does not carry the requisite quality of proof nor is it of such nature or degree to permit a reasonable mind to conclude that appellant is the father of the child in question. The crucial question in this appeal is whether the evidence tending to show that appellant is the father is sufficient or adequate to induce conviction upon that ultimate issue in the mind of reasonable

persons in the light of the maximum period of gestation as shown by that same evidence. The evidence concerning the length of the gestation period is therefor all important.

The cases cited by appellee wherein periods of gestation somewhat shorter than usually considered to be normal, i.e., less than 280 days[1] are not determinative of the question here and are distinguishable because the periods considered in those cases were only slightly less than normal. *Hull* v. *State, ex rel. Dickey* (1884), 93 Ind. 128 (238 days) ; *Barkey* v. *Stowell* (1947), 117 Ind. App. 162, 70 N. E. 2d 430 (237 days) ; *McGoldrick* v. *State ex rel. Shull* (1927), 87 Ind. App. 175, 155 N. E. 52 (230 days). To the extent, however, that the *McGoldrick* case, *supra,* and other cases cited herein may be considered to permit the trier of fact to disregard uncontroverted medical evidence and premise a paternity finding upon unsupported physical *possibilities,* they are hereby overruled.

The other authorities relied upon by appellee concerning the sufficiency of the evidence do not involve an "abnormal" gestation period. In *Goldman* v. *State ex rel. Thomas* (1935), 101 Ind. App. 147, 198 N. E. 450, the conflicting testimony considered was that of appellee and appellant. The gestation period there was normal and the sole question involved the matter of credibility and whether other acts of intercourse occurred with other males during the same period. To the same effect and therefore inapplicable here are *Michael* v. *State, ex rel. Pearson* (1915), 57 Ind. App. 520, 108 N. E. 173; *Rinehart* v. *State ex rel. Keith* (1899), 23 Ind. App. 419 55 N. E. 504; *Goodwine* v. *State ex rel. Dove* (1892), 5 Ind. App. 63, 31 N. E. 554. Compare *Whitman* v. *State ex rel. Hemminger* (1870), 34 Ind. 360, in which a determination of paternity was reversed when the plaintiff-appellee admitted many acts of intercourse with different persons at the ap-

---

1. Some authorities consider normal human gestation to last not 280 days but rather 260 to 265 days. *Lee-Greenhill, Principles & Practice of Obstetrics* (8th Edition 1943) page 8.

proximate time of conception as judged by the "normal" gestation period.

The trial court's determination here is supported only by certain inferences which we believe to be unreasonable. The trial court necessarily believed, as it may have properly done, that the first time appellee had intercourse with appellant was on November 26, 1966. There was evidence that neither appellant nor appellee utilized a contraceptive on any occasion. The trial court undoubtedly disbelieved entirely, justifiably so, the testimony of two witnesses concerning acts of intercourse with appellee in July or August, 1966, by two other boys. Disregard of such testimony, however, does not give rise to a permissible inference that appellee did not have *any* sexual intercourse prior to November 26, 1966. It leads only to the inference that she did not have relations with the two boys named in the testimony.

This court is not prompted to agree with the findings of the trial court on the basis of the evidence above recited nor upon the fact that appellant at various times clearly indicated his willingness, even desire, to marry the appellee. It is uncontradicted that appellant and appellee each stated their love for the other; that they discussed on several occasions marriage plans and a date therefor; that they looked at house-trailers; and that they discussed and picked out names for the expected child. These facts would perhaps make a determination of paternity a less awesome responsibility for the trier of fact but cannot be considered as proof that appellant, in fact, fathered the child in question.

In this connection we are not unaware of a prevalent sentiment or moral standard that "if one is to dance, he must pay the piper." Such can often times happily result in a name, a home, and economic support for a defenseless infant. We, therefore, do not take lightly the difficult decision made here. However, we are confronted with a somewhat conflicting truism—a reality of the law of human nature and a realization that sexual permissiveness exists. It is not difficult or

uncommon for an expectant unwed mother to point the finger at a self-appointed Don Juan. It is difficult, if not impossible, however, for that Don Juan to disprove his potency and romantic prowess absent a negative blood test.

Appellee's testimony that she never had sexual relations with anyone except appellant is contrary to the only reasonable conclusion to be drawn from the laws of nature and from the medical facts as indicated by the testimony of appellee's physician.

This cause is a classic example of the probative dilemma occasioned by forcing a medical witness to testify in term of "possibilities" on the one hand or "certainties" on the other hand. As Justice Holmes said in *The Path Of The Law,* "Certainty generally is illusion." It follows therefore, by analogy that mere possibilities are rarely of consequence in the law. That the court below considered the standard for the probative effect of expert testimony to be *possibility,* rather than *probability,* is indicated by the following dialogue, among the court, the medical witness and by appellant's counsel:

"BY THE COURT: All right, now one last question. Considering this particular baby, its weight was seven pounds, its length was nineteen and a half inches, its appearance, which you apparently examined very carefully, considering its condition when it was delivered, in your general opinion, could it have been possible for this baby to have been a baby of a 212 (sic) day pregnancy?

BY THE WITNESS: Two, twelve?

BY THE COURT: Right. Conceived November 16th,[2] (sic) born June 16th.

BY THE WITNESS: Well, it would be unusual. I'll put it that way, if it were.

BY THE COURT: Would it be impossible?

BY THE WITNESS: It would not be impossible.

BY THE COURT: That is all the questions I have. Do you gentlemen have any further question?"

2. There was no evidence from which an act of intercourse between appellant and appellee could be inferred to have taken place on or about November 16, 1966.

The following exchange by the appellant's counsel, the witness and the court is as follows:

"Q. You say it would not be impossible, would it be probable?
A. Not probable.
BY THE COURT: I just asked him and he said not probable, but not impossible."

The testimony of the doctor was expert testimony. It understandably did not exclude the *possibility* that a seven pound child 19½ inches in length could have a gestation period of no more than 202 days.

To be sure, members of the medical profession often take umbrage at the inconvenience to themselves caused by appearances in court—notwithstanding the almost universal trial practice of altering the logical order of proof so that physicians spend as little time as humanly possible away from their practice—to the extent that they become curt, hostile and uncooperative in their testimony, sometimes to the point of obfuscating the physical and medical truth. Nevertheless the law must recognize that the practice of medicine, like the law, is not an exact science. Meaningful medical diagnoses and prognoses, like legal counsel, trial strategy, and the determination of factual issues, depend upon probability *NOT* possibility or certainty. The standards by which we guage medical testimony must recognize this important similarity. We must hesitate to challenge medical testimony as merely the desire of the medical expert to avoid traps of cross-examination or as merely the desire of the medical expert to be sufficiently vague in his testimony so as to leave an "out" should contrary medical evidence be presented.

An act of intercourse coupled with the *probability* of conception at that time will support a determination of paternity. An act of intercourse plus the *possibility* of conception, however, as a matter of law, cannot serve to support such determination.

We, therefore, reverse the decision of the trial court and remand the cause with instructions for entry of judgment consistent with this opinion.

Costs versus appellee.

Lowdermilk, C.J., Carson and Cooper, JJ., concur.

Note.—Reported in 255 N. E. 2d 828.