JERRY LEE COLLINS *v.* JUDY WISE.

[No. 2-972A60. Filed June 19, 1973.]

*Ancel and Ancel,* of Indianapolis, for appellant.

SHARP, J.—This is an action to determine the paternity of a male child born April 6, 1969 to the Appellee. The Juvenile Court jury determined that Appellant was the father of said child from which determination the Appellant has properly perfected this appeal.

We must consider the factual record with all inferences most favorable to Appellee. A summary of the salient facts in this record discloses that Appellant and Appellee had known each other since 1964. Appellee testified that she had sexual relations with Appellant regularly between February 1968 and the third week of July 1968 and during such period she had intercourse with no other man than the Appellant. She also testified that she had her last menstrual period in the middle of June 1968 and first noticed symptoms of pregnancy around the first of July. There was also evidence, not from Appellee, that Appellee had a menstrual period around July 10-12, 1968. Appellee entered United States Army on July 30, 1968 and was discharged on November 20, 1968 as being four months pregnant. Dr. Mauro Chavez testified that given the child's date of birth, weight, and length taken in context with Appellee's evidence as to her period it was medically possible that said child was conceived prior to the last time Appellee had intercourse with Appellant which she said was the third week of July 1968.

On this Appeal Appellant asserts for our consideration that

the verdict is not supported by sufficient evidence, and errors in regard to the refusal of Appellant's tendered instructions.

The weight and credibility of the evidence was for the jury at the trial level and all reasonable inferences with reference to the same are in favor of the Appellee here on appeal. *Libertowski* v. *Hojara* (1967), 141 Ind. App. 439, 228 N.E.2d 422. There is no question that at the trial level Appellee as petitioner in a paternity action had the burden of proof. *Matis* v. *Yelasich* (1956), 126 Ind. App. 287, 132 N.E.2d 728.

The trial of this case was a vigorous contest in which the jury was given many opportunities to weigh the conflicting evidence and determine the credibility of the parties and their witnesses.

It is also well established in Indiana that proceedings to establish paternity are civil actions and the paternity of child need only be proved by a preponderance of the evidence. *Reynolds* v. *State* (1888), 115 Ind. 421, 17 N.E. 909; *Thomas* v. *Farr* (1965), 137 Ind. App. 269, 207 N.E. 650; and *Cohen* v. *Burns* (1971), 149 Ind. App. 604, 274 N.E.2d 283. It is equally well established that the petitioner's evidence need not be corroborated and its weight and credibility are to be determined by the jury. *Evans* v. *State* (1905), 165 Ind. 369, 75 N.E. 651 and *Solomon* v. *Fenton* (1969), 144 Ind. App. 100, 244 N.E.2d 228; *Rawles* v. *State* (1877), 56 Ind. 433. Even where there is evidence of intercourse with more than one man at near the time of conception, a verdict based on petitioner's evidence alone may be sufficient. *Michael* v. *State* (1915), 57 Ind. App. 520, 108 N.E. 173 .

Thus, in this case the testimony of the Appellee standing alone would be sufficient to support the verdict establishing paternity.

The trier of fact may consider the intimacy of and familiarity between the parties. *Ramey* v. *State* (1891), 127 Ind. 243,

26 N.E. 818, and evidence of repeated acts of intercourse both before and shortly after the time of conception may be considered. *Gemmill* v. *State* (1896), 16 Ind. App. 154, 43 N.E. 909.

The *probability* of conception as defined in *Beaman* v. *Hedrick* (1970), 146 Ind. App. 404, 225 N.E.2d 828, need not be established by any one witness. The testimony of the petitioner alone may establish such probability. *Solomon* v. *Fenton, supra.* Such probability may be established, in part, by expert medical testimony although such is not absolutely essential. In his brief the Appellant explicitly states that the evidence of the Appellee standing alone is sufficient to support a finding of paternity and cites *Solomon* v. *Fenton* and *Libertowski* v. *Hojara, supra.*

In this case Doctor Chavez testified as follows:

"Q. Doctor, assuming that a nineteen year old female had a normal period in the middle of June and, then, in the first or second week of July she had a blood spotting experience—not a full menstruation—and did not have a period in July—would that set of facts indicate symptoms of pregnancy?

A. That by itself?

Q. Plus missing the following period in August, September and October.

A. Yes.

Q. It would be a symptom of pregnancy?

A. Yes.

Q. O. K. In giving your opinion on the hypothetical questions asked by opposing counsel you were using a chart to show what is customary in average cases?

A. No—my own experience.

Q. You were using mathematical calculations based on average cases of pregnancy and child birth?

A. Right.

Q. Isn't it a fact, with reference to pregnancy and child birth, there are many exceptions that don't meet what is the average—isn't that a fact?

A. True."

On direct examination Dr. Chavez testified in answer to a hypothetical question that contained facts favorable to the Appellant, the probable time of conception as follows:

"Q. Now, Doctor, let's assume you have a nineteen year old white female who has normal, regular periods with the last period beginning on July 10, 1968 lasting approximately four to five days and being of normal quantity and that her periods occur approximately every twenty-two days and, also, assume that on April 6, 1969 she gave birth to a five pound five and a half ounce male child measuring eighteen and a half inches in length—based upon those stated facts, give your opinion as to the probable date that the child was conceived.

A. Approximately July 26th.

Q. 1968?

A. Yes. Give a day or take one."

On this same subject the Appellee testified:

"Q. Judy, did you have occasion to have sexual relations with the defendant—Collins—at that address:

A. Yes—I did.

Q. Tell the Court approximately if you had sexual relations more that [sic] once?

A. Yes.

Q. Tell the jury approximately how many times you had relations with him?

A. Well, sometimes, maybe, three times a week or maybe more.

Q. During what months did that occur, Judy, that you had relations with the defendant at that address?

A. Approximately, May, June and July of 1968.

Q. May, June and July?

A. Yes.

Q. Until how late in July?

A. Approximately the third week—the last or third week.

Q. Approximately how many—you left that address before the end of July?

A. Yes.

Q. How long before the end of July did you leave?

A. Approximately three or four days.

Q. Before the last day of the month?

A. Yes.

Q. As I understand it these sexual relations were taking place regularly during the entire months of May and June and July with the exception of the last three days in July?

A. To the best of my knowledge—yes.

Q. Judy, during those months that you were having sexual relations with the defendant was he or you using any protection to keep you from becoming pregnant?

A. To the best of my knowledge—no.

Q. You never used any?

A. No.

Q. And he never used any?

A. No."

At another point this same medical witness was asked another hypothetical question based on facts favorable to Appellant and testified:

"Q. Doctor, I am going to ask you a hypothetical question for your opinion. Let's assume that you are presented with a 19 year old white female and that the young lady had her last period in the middle of June, 1968 and her periods are normal and with regularity, four to five days and occurring approximately every twenty-seven days; and, also, assume that on April 6, 1968—correction, '69—she gave birth to a five pound five and half ounce male child—length was eighteen and a half inches.

A. The middle of June was her last period?

Q. Yes and she gave birth to this child April 6, 1969. The weight was five pounds and five and a half ounces—length eighteen and a half inches—now, based on those facts, are you able to give us your professional opinion as to the probability of that child being conceived in June of 1968?

                    *   *   *

Q. Doctor, going back to the assumption I was discussing before—let's assume that a girl has been presented to you that has had normal periods lasing four to five

days with approximately twenty-eight days between periods; also, periods lasting seven days with twenty-eight days between periods and based upon the foregoing facts are you able to give us your opinion as to the probability of this girl conceiving a child in June of 1968?

\* \* \*

Q. Do you have an opinion?

A. Yes.

Q. What is that opinion?

A. Well, a baby weighing 5½ pounds born April 6th would have been conceived approximately on July 22nd."

Thus, the evidence of the Appellee indicates intercourse between the parties as late as July 27 or 28, 1968, well within the time frame Dr. Chavez, a witness for Appellant, established as the probable time of conception. This satisfies the standard of probability set forth in *Beaman* v. *Hedrick, supra.*

The lay evidence of the Appellee taken in the light most favorable to her, is not in conflict with the evidence of Dr. Chavez, examined in the same light, on the issue of probability but is consistent therewith. So we do not here have the kind of conflict in evidence that caused the reversal of *Beaman* v. *Hedrick.*

The evidence here was sufficient to support the verdict.

Next, the Appellant raises questions about five instructions tendered by the Appellant and refused by the trial court. The Appellant has failed to set out in his brief the 14 instructions which the trial court did give. We could simply decide this issue on the technical basis that Appellant's brief is inadequate to permit us to determine whether the contents of Appellant's tendered and refused instructions were covered by those given. We have taken the trouble to carefully make the necessary comparison by reference to the transcript and find that all of the contents of Appellant's tendered and refused instructions were adequately covered in the court's given instructions.

To be sure, the rhetoric and form of the trial court's instructions are not shaded in the Appellant's favor and would not

be as helpful to Appellant's counsel for reading to the jury in his final argument. However, the court's instructions are balanced and even handed statements of the law which give the jury the basic rules of law to determine a paternity case.

Therefore, we find that Appellant has failed to demonstrate a prima facie basis for reversal and therefore, even in the absence of an Appellee's brief, we affirm the decision of the trial court.

Affirmed.

Hoffman, C.J. and Staton, J., concur.

NOTE.—Reported at 296 N.E.2d 887.