Raymond **FLORES**, Appellant–
Plaintiff,

v.

Juan P. Rocha **GUTIERREZ**,
Appellee–Defendant.

No. 45A04–1101–CT–28.

Court of Appeals of Indiana.

Aug. 10, 2011.

Adam J. Sedia, Rubino, Ruman, Crosmer, Smith, Sersic & Polen, Dyer, IN, Attorney for Appellant.

Shawn C. Swope, Swope Law Offices, LLC, Schererville, IN, Attorney for Appellees.

## OPINION

BRADFORD, Judge.

Following an automobile accident, Appellant–Plaintiff Raymond Flores brought a personal injury action against Appellee–Defendant Juan Rocha Gutierrez in which Gutierrez was determined to be liable, but the jury awarded Flores no damages. The trial court subsequently denied Flores's motion to correct error alleging that the verdict was inconsistent with the evidence and inadequate as a matter of law. Upon appeal, Flores claims that the trial court abused its discretion in denying his motion to correct error. In addition, Flores challenges the trial court's admission of certain evidence, specifically a photograph of property damage and his claim for worker's compensation benefits relating to a subsequent fall. He also challenges the trial court's exclusion of certain of his medical records. We affirm.

## FACTS AND PROCEDURAL HISTORY

On December 6, 2007, Gutierrez's vehicle struck Flores's vehicle from behind as it was stopped at an intersection in Hammond, Indiana. Following a brief investigation by police, Flores drove his vehicle home. Flores, who claimed that his back and neck hurt, sought care from his family practice physician, Dr. Herbert Alan Jones, D.O., the next day.

Previously, in 1999, Flores had similarly sought treatment from Dr. Jones for neck and back pain following an automobile accident. At the time, Flores was diagnosed with arthritis, scoliosis, and degenerative disc disease. According to Dr. Jones, Flores's neck and back pain attributable to the 1999 accident had resolved by 2001.

Upon examining Flores following the December 2007 accident, Dr. Jones determined that he had decreased range of motion in his neck and back. Subsequent x-rays demonstrated that Flores had muscle spasm in his cervical spine, as well as osteoarthritis, narrowing of the disc spaces, and neural foraminal compromise. According to Dr. Jones, the osteoarthritis, narrowing of the disc spaces, and neural foraminal compromise were attributable to degenerative changes and aging. X-rays

of Flores's lumbar spine showed scoliosis and osteoarthritis. According to Dr. Jones, a person with Flores's height, weight, and medical history could be expected to have some arthritis and "spine issues." Tr. p. 162.

Flores returned to Dr. Jones on December 14, 2007. An MRI of Flores's cervical spine found "multilevel disc disease and ostioarthritis [sic] causing muscle spasm, spinal stenosis and foraminal compromise[.]" Plaintiff's Exh. 2, p. 5. Dr. Jones testified, contrary to the MRI report, that the muscle spasm was caused by the accident. An MRI of Flores's lumbar spine showed disc disease and facet join arthrosis, both of which preexisted the accident. Dr. Jones referred Flores to pain management specialist Dr. Adlaka. Flores sought additional relief from a chiropractor. Flores next visited Dr. Jones on July 7, 2008 for reasons unrelated to the accident. At that visit, Flores mentioned he had stiffness in his back.

On April 13, 2009, Flores filed an action against Gutierrez for damages arising out of the December 6, 2007 accident. In January of 2010, Flores fell on some ice at his place of employment. He sought medical care and received x-rays following that fall, and he filed a worker's compensation claim.

Following his July 7, 2008 visit, Flores's next visit to Dr. Jones allegedly relating to the accident was on March 6, 2010, at which time he reported continuing back and neck pain. Flores did not report the January 2010 fall to Dr. Jones, however, and Dr. Jones was unaware that it had occurred.

On May 5, 2010, following unsuccessful efforts to locate Gutierrez, the trial court entered a default judgment against him as to liability but ruled that Flores had the burden of proving proximate cause, injury and damages. In addition, the trial court barred Gutierrez from testifying at trial, and barred his defense counsel from presenting expert witnesses, including experts to contest reasonableness, necessity, or causation of Flores's medical care.

Flores visited Dr. Jones again on March 31, May 22, June 5, and June 19, 2010. As of March 31, 2010, Dr. Jones's diagnosis of Flores was that he had cervical whiplash and a ruptured disc to the neck and back which Dr. Jones attributed to the December 6, 2007 accident. In Dr. Jones's view, this diagnosis represented an aggravation of a preexisting condition and would remain a chronic condition. Dr. Jones referred Flores to Rehabilitation Center for physical therapy, among other treatments.

Prior to trial, Flores filed a motion in limine seeking to exclude Defendant's Exhibit D, a photograph of Flores's vehicle following the accident. The photograph shows little to no damage to the vehicle. Flores also sought to exclude any references to his worker's compensation claim. The trial court denied the motions.

At trial, Flores conceded in his testimony that he had made statements during discovery proceedings that he had not had back or neck problems prior to the December 6, 2007 accident. Also at trial, the trial court admitted, over Flores's objection, Defendant's Exhibit D. The trial court also permitted defense counsel to refer to Flores's worker's compensation claim. In addition, the trial court excluded Plaintiff's Exhibits 3, 4, 6, and 7, which consisted of various medical records.

Upon being instructed that the trial court had found Gutierrez at fault, the jury returned a verdict finding Gutierrez at fault but awarding zero damages. Following the trial court's entry of judgment, Flores filed a motion to correct error on September 14, 2010. The trial court denied the motion, and this appeal follows.

## DISCUSSION AND DECISION

### I. Damages

Flores's first claim on appeal is that the jury's award of zero damages is inconsistent with the evidence and inadequate as a matter of law. A jury determination of damages is entitled to great deference when challenged on appeal. *Sears Roebuck and Co. v. Manuilov*, 742 N.E.2d 453, 462 (Ind.2001). The applicable standard of review has been summarized as follows:

> Damages are particularly a jury determination. Appellate courts will not substitute their idea of a proper damage award for that of the jury. Instead, the court will look only to the evidence and inferences therefrom which support the jury's verdict. We will not deem a verdict to be the result of improper considerations unless it cannot be explained on any other reasonable ground. Thus, if there is any evidence in the record which supports the amount of the award, even if it is variable or conflicting, the award will not be disturbed.

*Id.* (quoting *Prange v. Martin*, 629 N.E.2d 915, 922 (Ind.Ct.App.1994) (internal citations omitted)). In addition, the Supreme Court has noted the following:

> Our inability to actually look into the minds of the jurors is, to a large extent, the reason behind the rule that we will not reverse if the award falls within the bounds of the evidence. We cannot invade the province of the jury to decide the facts and cannot reverse unless the verdict is clearly erroneous.

*Id.* (quoting *Annee v. State*, 256 Ind. 686, 690, 271 N.E.2d 711, 713 (1971)).

Flores's claim is premised upon his assumption that the jury was required to believe Flores's and Dr. Jones's testimony that Flores's injuries were caused by the 2007 collision with Gutierrez.[1] But the jury was within its fact-finding discretion to discredit this testimony. Evidence at trial indicated that the accident was not particularly violent. Flores drove himself home afterward, and the damage to his vehicle, if any occurred, was slight. Evidence further indicated that Flores was not always forthcoming regarding his history of neck and back pain and that he had had failed to disclose the fact of his January 2010 fall to Dr. Jones. Accordingly, the jury would have been fully justified in finding Flores's testimony lacking in credibility. Further still, Dr. Jones's opinion that Flores's muscle spasm was caused by the accident was directly contradicted by the December 14, 2007 MRI report attributing muscle spasm to osteoarthritis and/or multilevel disc disease. In addition, Dr. Jones specifically testified that the fact of a fall would be relevant to his diagnosis, that he had been unaware of Flores's January 2010 fall when reaching his diagnosis, and that his assessment of Flores was based, at least in part, upon Flores's representations. The jury was therefore similarly justified in discrediting Dr. Jones's diagnosis.

Flores suggests that, without expert testimony to the contrary, the jury was not free to discredit Dr. Jones's testimony. It is true that "[t]he testimony of a trained physician who has examined and treated a patient concerning matters purely within the medical realm cannot be con-

1. Flores analogizes his case to *Neher v. Hobbs*, 760 N.E.2d 602, 607 (Ind.2002), wherein the Supreme Court affirmed the trial court's reversal of a jury verdict of zero damages. In *Neher*, however, the parties stipulated that medical expenses were incurred. *Id.* We do not interpret defense counsel's closing argument acknowledging that the jury could award $100 for Flores's initial appointment to "get checked out" to make sure there was "nothing wrong" as an analogous stipulation to damages. Tr. p. 377.

troverted by lay opinion or by judicial speculation or inference." *Beaman v. Hedrick,* 146 Ind.App. 404, 407, 255 N.E.2d 828, 830 (1970) (reversing trial court determination of paternity when expert medical witness's testimony was that paternity was improbable but not impossible). "However, on medical matters which are within the common experience, observation, or knowledge of laymen, no expert testimony is required to permit a conclusion on causation." *Willis v. Westerfield,* 839 N.E.2d 1179, 1188 (Ind.2006) (internal quotation omitted).

We are not persuaded that causation in this case was a matter purely within the medical realm. Flores had multiple back problems, including a history of back and neck pain, much of it pre-existing what was from all appearances a relatively minor accident. An MRI report specifically attributed his muscle spasm condition to these pre-existing conditions, not to the accident as Dr. Jones did. Flores did not seek medical attention for his injury from his diagnosing physician during an almost two-year gap between his initial visits and the instant diagnosis. In addition, he sustained a fall during this time period which he did not divulge to Dr. Jones and which Dr. Jones did not consider when reaching his diagnosis. As Dr. Jones testified, such a fall would have been relevant to the diagnosis. The simple facts that Flores had multiple pre-existing back problems with multiple causes and that Dr. Jones's diagnosis was attributable to an incomplete record and a patient with credibility problems places it outside the "purely medical realm" requiring expert testimony to controvert it. *See Ferdinand Furniture Co. v. Anderson,* 399 N.E.2d 799, 807–08 (Ind. Ct.App.1980) (affirming verdict contrary to expert witness engineer's testimony because vigorous cross-examination undermined his conclusions). The jury's determination that Flores was entitled to zero damages arising out of his accident with Gutierrez is not outside the bounds of the evidence.

## II. Admissibility of Evidence

■ Flores also challenges the trial court's admission and exclusion of certain evidence. A trial court's ruling on the admissibility of evidence is generally reviewed for an abuse of discretion. *Tolliver v. State,* 922 N.E.2d 1272, 1278 (Ind.Ct. App.2010), *trans. denied.* This court will reverse only where the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. *Id.*

### A. Exhibit D

Flores first claims that Exhibit D was inadmissible on the grounds that it was irrelevant to any determination of his bodily injury. The parties agree there is no Indiana authority on this issue. In support of his argument, Flores points to *Davis v. Maute,* 770 A.2d 36, 40 (Del.2001), in which the Delaware Supreme Court reversed a trial court's admission of photographs of property damage for purposes of establishing injury. In reversing, the Davis court reasoned that, absent expert testimony, any inference by the jury that minimal damage to a plaintiff's car translated into minimal personal injury to the plaintiff was "unguided speculation." *Id.* at 40.

Significantly, Davis has since been limited to its facts. In *Eskin v. Carden,* 842 A.2d 1222, 1233 (Del.2004), the Delaware Supreme Court indicated that Davis had been "misinterpreted" as a bar to the admission of photographs without expert testimony. Acknowledging that photographs of vehicles involved in accidents may be admitted for many helpful purposes, the *Eskin* court concluded, "Davis should *not* be construed broadly to require expert

testimony in every case in order for jurors to be permitted to view photographs of vehicles involved in an accident." *Id.* (emphasis supplied).

Further, as Flores acknowledges, several other jurisdictions reject the *Davis* reasoning that property damage, without expert testimony to show a link, is not relevant to bodily injury. *See Accetta v. Provencal*, 962 A.2d 56, 61–62 (R.I.2009) (rejecting *Davis* in concluding that photographs of motor vehicles involved in accidents are admissible without expert testimony); *Brenman v. Demello*, 191 N.J. 18, 921 A.2d 1110, 1118 (2007) (stating, "[I]n most cases, there is a relationship between the force of impact and the resultant injury, and the extent of that relationship remains in the province of the factfinder."); *Marron v. Stromstad*, 123 P.3d 992, 1009 (Alaska 2005) (rejecting "rigid approach" in *Davis* and concluding that evidence of undamaged vehicle is probative of the force with which the accident occurred and likelihood that it caused serious harm); *Mason v. Lynch*, 388 Md. 37, 878 A.2d 588, 601 (2005) (endorsing view that significant personal injury is unlikely in the absence of substantial property damage and concluding that photographs of damaged vehicles are admissible in personal injury actions); *Berndston v. Annino*, 177 Conn. 41, 411 A.2d 36, 38–39 (1979) (observing that evidence of physical impact is relevant to the probable extent of personal injuries).

Flores also points to *DiCosola v. Bowman*, 342 Ill.App.3d 530, 276 Ill.Dec. 625, 794 N.E.2d 875, 878 (2003), where the Illinois Appellate Court affirmed the trial court's exclusion of photographs of property damage because there was no expert evidence to establish a relationship between the property damage and the injury.

Importantly, however, the *DiCosola* holding was largely based upon the trial court's discretion to rule on relevance. *Id.*, 276 Ill.Dec. 625, 794 N.E.2d at 879. In affirming the trial court's exclusion of such evidence, the *DiCosola* court stated that it was simply refusing to create a bright-line rule that such evidence was always admissible. *Id.* Indeed, in reaching its holding, the *DiCosola* court relied upon a prior decision affirming a trial court's admission of such photographs. *See Cancio v. White*, 297 Ill.App.3d 422, 232 Ill.Dec. 7, 697 N.E.2d 749, 756 (1998).

Here, the trial court admitted Exhibit D on the basis that it was properly authenticated and relevant to Flores's personal injury claim arising out of a car accident. Flores admitted during his testimony that Exhibit D truly and accurately depicted his vehicle as a result of the impact. Under Indiana Evidence Rule 401, relevant evidence is "evidence having *any* tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." (Emphasis supplied.) In admitting Exhibit D, the trial court concluded that the damage, or lack thereof, to Flores's vehicle had some tendency to prove or disprove facts relating to his personal injury claim. We agree. Flores presented no expert testimony to suggest that, under these facts, no such tendency existed. To the contrary, his own expert, Dr. Jones, testified that he had inquired into vehicle damage when assessing Flores's condition immediately following the accident. While additional testimony by Dr. Jones suggested that a direct relationship between damage and injury does not always exist,[2] he did

---

**2.** Dr. Jones testified that he had seen people in minor accidents who had ruptured discs in

their neck and back, as well as people who

not indicate that such a relationship was nonexistent under these circumstances. (Appellant's App. 59–60) Given that *Davis* has been limited to its facts, and that multiple other jurisdictions and, indeed, Dr. Jones, have observed the common-sense relationship between property damage and personal injury, we conclude that the trial court was within its discretion to admit Exhibit D as relevant.[3]

■ Flores also appears to argue that Exhibit D was more prejudicial than probative and thus should have been excluded pursuant to Indiana Evidence Rule 403. Under Rule 403, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice.

Flores points out that neither Gutierrez, nor Gutierrez's vehicle, nor pictures of the vehicle, was available for cross-examination. Accordingly, Flores viewed Exhibit D as unfairly prejudicial because it painted an incomplete picture of the accident. We have already concluded that the trial court was within its discretion to conclude that damage to Flores's vehicle was probative of the extent of his injuries. As for prejudicial effect, Flores made no showing that any other photographs would have shown extensive damage. To the contrary, there is no suggestion in the record that Gutierrez's vehicle sustained damage. Indeed, defense counsel told the trial court that the vehicle did not sustain damage, and he also indicated that Gutierrez, who had collision coverage, did not make a claim following the accident. Flores's claim that Exhibit D is unfairly prejudicial, therefore, is purely speculative. Further, Flores's counsel made it clear to the jury that

Exhibit D depicted only one of the vehicles involved and did not tell the whole story of the accident. The jury could have inferred as much from the absence of evidence as from its presence. We cannot conclude that Exhibit D was overly prejudicial under Rule 403.

### B. January 2010 Fall

■ Flores next claims that the trial court abused its discretion in permitting references to his January 2010 fall and resulting worker's compensation claim. According to Flores, the January 2010 accident injured parts of his body other than his neck and back and was therefore irrelevant. Flores further contends that expert evidence was necessary to establish the necessary link between the 2010 accident to his neck and back pain. He cites *Daub v. Daub*, 629 N.E.2d 873, 877–78 (Ind.Ct.App.1994), *trans. denied*, and *Buhring v. Tavoletti*, 905 N.E.2d 1059, 1064–65 (Ind.Ct.App.2009) in support of this proposition.

The *Daub* and *Buhring* decisions address the requirement of expert evidence for purposes of establishing a burden of proof. *Daub*, 629 N.E.2d at 877–78 (plaintiff's burden to establish tort); *Buhring*, 905 N.E.2d at 1064–65 (defendant's burden to establish affirmative defense). But Gutierrez, who was the defendant in the instant action, did not have the burden of proof with respect to causation. In conducting cross-examination of Flores's witnesses, therefore, he was only required to show a logical nexus or causal relationship between the injury sued upon and another injury or condition. *See Rondinelli v. Bowden*, 155 Ind.App. 582, 586, 293 N.E.2d 812, 815 (Ind.Ct.App.1973). The test of

have been in accidents resulting in $30,000 in damage who suffered no injury.

**3.** While the link at issue here is between minimal property damage and minimal injury, this

commonsense relationship may also be relevant to link significant property damage and serious injury.

admissibility is not probability, but possibility, i.e., testimony as to a prior accident is relevant where there is competent proof from which it could be inferred that the injury complained of is attributable to the prior or subsequent event. *Id.* at 586, 293 N.E.2d at 815. Here, Flores's complaint was of generalized back and neck pain, and his 2010 fall was serious enough to warrant medical attention. Indeed, his own expert witness, Dr. Jones, testified that the fact of a January 2010 fall would have been important for purposes of determining the causation of his back and neck pain. We find no abuse of discretion in the trial court's permitting references to the January 2010 fall.

### C. Medical Records

 Flores's final challenge is to the trial court's exclusion of certain of his medical records. Specifically, the trial court excluded Plaintiff's Exhibits 3, which were Merillville Plaza Surgery Center records; Exhibit 4, which were Dr. Adlaka's records; Exhibit 6, which were Accelerated Rehabilitation Center records; and Exhibit 7, which were Community Chiropractic records. According to Flores, Dr. Jones was familiar with all of the medical conditions described in the records.

Significantly, some of the rehabilitation center records were contained in Plaintiffs Exhibit 2,[4] which was admitted. Flores is simply mistaken, therefore, to claim that the trial court excluded all of the rehabilitation center records.

 In any event, for medical opinions and diagnoses to be admissible, they must meet the requirements for expert opinions set forth in Indiana Evidence Rule 702. *Estate of Dyer v. Doyle,* 870 N.E.2d 573, 579 (Ind.Ct.App.2007) (citing *Wilkinson v.*

*Swafford,* 811 N.E.2d 374 (Ind.Ct.App. 2004), *abrogated on other grounds by Willis v. Westerfield,* 839 N.E.2d 1179 (Ind. 2006)), *trans. denied.* Pursuant to Rule 702, the subject matter must be distinctly related to some scientific field, business, or profession beyond the knowledge of the average person. *Schaefer v. State,* 750 N.E.2d 787, 793 (Ind.Ct.App.2001). In addition, the witness must have sufficient skill, knowledge, or experience in that area so that the opinion will aid the trier of fact. *Id.* Importantly, " '[e]xpressions of opinion within medical or hospital records historically have not been admissible under the business records exception because their accuracy cannot be evaluated without the safeguard of cross-examination of the person offering the opinion.' " *Schaefer,* 750 N.E.2d at 794, *quoted in Dyer,* 870 N.E.2d at 579.

In *Wilkinson,* a party sought to admit a doctor's medical report through the testimony of his medical partner. 811 N.E.2d at 388. The partner did not prepare the report and was not involved in the examination leading to the report. *Id.* at 390. This court affirmed the trial court's exclusion of the report because (1) there was no foundation to show that the doctor who prepared the report was an expert, and (2) there was no opportunity to cross-examine him on his qualifications or the basis for his opinions. *Id.* at 391–92.

Similarly here, Flores sought to introduce medical records directly relating to his treatment by certain experts whose credentials were never established and who were not available for cross-examination. We find no abuse of discretion in the trial court's exclusion of those exhibits.[5]

---

4. Plaintiffs Exhibit 2 consists of Dr. Jones's records.

5. Flores contends that the trial court should have admitted redacted versions of the exhibits but points to nowhere in the record dem-

The judgment of the trial court is affirmed.

BAKER, J., and MAY, J., concur.

onstrating that he tendered such redacted versions.

Flores further argues that defense counsel referred to the exhibits on cross-examination, which he contends makes them admissible. Defense counsel's cross-examination of Dr. Jones was largely confined to Dr. Jones's records in Exhibit 2. While defense counsel referenced the existence of other records (Appellant's App. 66, 73), including Dr. Adlaka's and a chiropractor's, Flores's counsel had already elicited these facts during direct examination. In any event, defense counsel's cross-examination did not involve the substantive contents of the excluded exhibits. These arguments warrant no relief.