*B. F. Claypool* and *J. M. Wilson,* for appellees.

———————◇———————

## Lower *v.* Wallick.

IMPRISONMENT FOR DEBT.—Section 22 of the bill of rights, which provides that there shall be no imprisonment for debt, except in case of fraud, applies only to debts growing out of contract, express or implied.

SAME—BASTARDY.—Section 15 of the bastardy act, 2 G. & H. 628, which provides that the court shall require the defendant, if he be in custody, to replevy the judgment, or in default thereof shall commit him to jail, is not in conflict with sec. 22 of the bill of rights, and is constitutional.

SAME—INSOLVENT DEBTOR.—The statute providing for the discharge of insolvent debtors, 2 G. & H. 257, does not apply to the case of a person imprisoned under the bastardy act.

APPEAL from the *Miami* Circuit Court.

GREGORY, J.—This was an application by the appellant for a writ of *habeas corpus.* The writ was denied. *Lower* appeals to this court.

The facts shown by the petition are, that in a proceeding under the act regulating prosecutions in cases of bastardy, and providing for the support of illegitimate children, the petitioner was found guilty, and adjudged to pay to the mother of the bastard $350, in $50 yearly installments. It was ordered that the defendant should, upon failure to pay or replevy the judgment, be committed to the county jail, until the judgment should be paid or replevied. The de-

fendant, at the time of the rendition of the judgment, was not in custody. The appellant, after being imprisoned, filed his affidavit with the sheriff of the county that he had no property, either real or personal, subject to execution, and that he had no moneys, rights, credits, or effects in his possession, or under his control, or in the possession, or under the control of any other person for his use, exceeding, with other property retained, the amount exempt from execution, and that he had neither directly nor indirectly disposed of, transferred or concealed any of his property, rights, credits, moneys or effects, nor confessed or suffered any judgment with intent to delay or defraud any of his creditors. The relator in the bastardy case had notice of the filing of this affidavit, and appeared by her counsel, and objected to the discharge, on the ground that there was no law authorizing it. The sheriff refused to discharge the prisoner.

The first question pressed upon our attention in the case in judgment, is the unconstitutionality of that part of the bastardy act which authorizes imprisonment. This court, in the case of *Byers et al.* v. *The State ex rel. Hutchinson*, 20 Ind. 47, held that the 4th and 5th sections of this act, so far as they require the defendant to enter into recognizance to appear, &c., in order to prevent his imprisonment, are unconstitutional and void, because a prosecution for bastardy is founded neither on a criminal nor penal statute, and is a proceeding to enforce a mere civil obligation, for the nonperformance of which the defendant cannot be imprisoned. We are now called upon by the appellees to review this decision. The constitution of this State took effect on the 1st day of *November*, 1851; the act in question was passed a little more than six months afterward, at the first session of the legislature under that constitution, many of the members of which had constituted a part of the convention which framed it, and all had, as citizens of the State, participated in its adoption. Under this act, imprisonment had been enforced and acted upon by our

courts for more than ten years, and, so far as we know, without question or objection. No attempt had been made by the legislature to repeal this provision; it had been regarded, during all this time, as eminently just, no murmur of disapprobation had been heard from any quarter, save perhaps from the cell of the violator of public morals. Under such circumstances, it becomes a court of last resort to examine with care so grave a question, before declaring void an act deliberately passed by the legislature, approved by the executive of the State, and so long acquiesced in. The evil complained of, and intended to be remedied by the framers of the constitution, was imprisonment for debts created by *contract*, express or implied. Section 22 of the bill of rights provides that "the privilege of the debtor to enjoy the necessary comforts of life, shall be recognized by wholesome laws, exempting a reasonable amount of property from seizure or sale for the payment of any debt or liability hereafter *contracted;* and there shall be no imprisonment for debt, except in case of fraud." It will hardly be denied that the word "*contracted,*" in this section, is to be understood as referring to contracts in the legal acceptation of that word. Mr. *Webster,* in his unabridged dictionary, gives the legal definition of the word "contract" as being "the agreement of two or more persons, upon a sufficient consideration or cause, to do, or to abstain from doing, some act; an agreement in which a party undertakes to do, or not to do, a particular thing; a formal bargain; a compact." To give this word its broadest signification, would extend this section to every moneyed liability whatever, either criminal or civil. And if the word "debt," in the last clause, does not refer to, and embrace, only the class of debts and liabilities specified in the sentence immediately preceding, then there is no limitation whatever to the liabilities embraced by this constitutional restriction, other than that covered by the exception. It would follow that for fines and forfeitures there could be no imprisonment. But one of the rules of construction is, that

technical words and phrases, having a peculiar and appropriate meaning in law, are to be understood according to this technical import. The word "contract" is of this class. The rules of construction of written constitutions are in the main the same as those applied to statutes. "The first and fundamental rule in the interpretation of all instruments is, to construe them according to the sense of the terms and the intention of the parties." For "the reason and spirit of the law, or the causes which led to its enactment, are often the best exponents of the words, and limit their application." 1 Story on the Cons. 283. "Light may also be obtained from cotemporary facts, or expositions, from. antecedent mischiefs, from known habits, manners, and institutions, and from other sources almost innumerable, which may justly affect the judgment in drawing a fit conclusion in each particular case." *Id.* 284. And "the words of a law may sometimes express the meaning of the legislator imperfectly. They may, in their common acceptation, *include either more or less than his intention.*. *Id.* 285. In the case of *McCool* v. *The State*, 23 Ind. 127, this court, with some care, considered this section of the bill of rights, and came to the conclusion we now do, that the provision that "there shall be no imprisonment for debt, except in case of fraud," applies only to debts growing out of contracts, express or implied.

The learned judge who delivered the opinion in *Byers et al.* v. *The State ex rel. Hutchinson, supra,* disposes of this important question in this summary manner, he says: "That the bastardy act is neither a criminal nor a penal statute is settled by numerous decisions in *Kentucky*, of whose statute on the subject ours is a copy. 1 M. & H. Dig. It has thus been treated in this State. *The State* v. *Evans*; 19 Ind. 92, and *Walker* v. *The State*, 6 Blackf. 1. And such an act has been held in *Iowa* to impose simply a civil obligation, to create a debt, for the collection of which, under a constitution forbidding imprisonment for debt, such imprisonment is unlawful, *Holmes* v. *The State*, 2 Green's Iowa R. 501."

There is a marked difference between the constitution of *Iowa*, on this subject, and that of *Indiana*. By the former, imprisonment is abolished in every civil action, except in cases of fraud, by the latter, imprisonment is only abolished for debts created by contract, express or implied, except in case of fraud.

KINNEY, J., in delivering the opinion of the court in that ·case, says: "by the constitution adopted since the act pass-ed to provide for the support of illegitimate children, it is provided 'that no person shall be imprisoned for any debt, in any civil action, on mense or final process, unless in case of fraud,·and no person shall be imprisoned for a militia fine in ·time of peace.' Art. 2, § 9. As this article in the consti-tution abolishes imprisonment for debt in all civil actions, ·except in casês of fraud, it becomes important to ascertain and determine whether a prosecution under the bastardy act is *a civil or criminal* proceeding." The word "debt," in our con-stitution, does not of itself afford any criterion by which the class of cases can be determined in which imprisonment for debt has been abolished. The word includes that which is due from one person to another, whether money, goods or services; that which one person is bound to pay to another, or to perform for his benefit; that of which payment is liable to be exacted; due, obligation, liability. It is then a matter of importance to look at the context, to see if there is any thing which will afford the means by which it may be determined what class of cases are embraced. We have seen that the same word, in the preceding clause of the same sentence, is limited to debts created by contracts, express or implied, and the maxim *copulatio verborum indicat acceptationem in eodem sensu*, is a safe and sound rule in the con-struction of doubtful phrases and sentences; and, unless there is something to indicate a different intent, it is fair to presume that a word in question, and those which surround it, or im-mediately follow it, are designed to be *ejusdem generis*, and referrible to the same subject matter, or to be interpreted in a similar sense. And moreover, it was as equitable and as

important to exempt from seizure and sale on execution a reasonable amount of property, as to abolish imprisonment for debt. To leave the helpless debtor destitute of the means of subsistence would, in many cases, be as harsh and cruel as to imprison him. If it had been the intention of the convention to abolish imprisonment for every moneyed liability, in criminal as well as civil cases, other terms and phrases would have been used. But it is not even contended that this provision reaches criminal cases, and yet the argument is as strong in favor of extending it to that length, as it is in favor of embracing liabilities for violations of the bastardy act. If there is any limitation to the last clause of the section it must be found in the context. The *Iowa* constitution defines by express provision the class of cases included in the section abolishing imprisonment for debt, and therefore the case of *Holmes* v. *The State, supra,* throws no light on the question in controversy. It is unimportant, in this connection, to inquire whether the bastardy act is a penal statute. It will hardly be pretended that the liability under that act is a debt created by contract, either express or implied. The obligation of the father to maintain his children is founded in *nature,* and not in contract. 1 Black.'s Com. 447.

The case of *Byers et al.* v. *The State ex rel. Hutchinson, supra,* is overruled.

It is urged that as the appellant was not in custody at the time of the trial, the court below had no power to order his committal. Section 15 of the bastardy act, 2 G. & H. 628, provides that "such court shall on such verdict and judgment make such order as may seem just, for the securing such maintenance and education of such child, by the annual payment to such mother, or if she be dead, or an improper person to receive the same, to such other person as the court may direct, of such sums of money as may be adjudged proper, and shall render judgment for the same, specifying the terms of payment; and shall require of such defendant, if he be in custody, to replevy such judg-

ment, by good freehold security, or, in default thereof, shall commit such defendant to jail until security be given." This is a remedial statute, *Hamilton* v. *The Commonwealth*, 3 Mon. 212, and must be liberally construed. That the defendant was allowed a trial without being in custody was a favor to him, and was no waiver, on the part of the relator, of the right to have the defendant committed to jail, in case he failed or refused to comply with the order of the court. The power to commit for a contempt is incident to all courts of record, and is expressly recognized by statute, in the provision that "Circuit Courts shall have full authority," *    *    to punish, by fine and imprisonment, or either, all contempt of their authority and process in any matter before them, or by which the proceedings of the court, or the due course of justice, is interrupted." 2 G. & H. § 13, p. 8. If the Circuit Court had the power to make the order of payment and replevin bail, as incident to that power, that court could enforce obedience by imprisonment; for to disobey the legal process or order of a court is a contempt. *Taylor* v. *Maffatt*, 2 Blackf. 305.

It is claimed that the appellant was entitled to be discharged as an insolvent debtor, under the provisions of the code. 2 G. & H. pp. 257–8. There is nothing in this. The statute does not apply to persons in prison as for contempt, for failing or refusing to pay or replevy a judgment in bastardy. It only applies to judgment debtors who are charged in execution against the body, after a trial for fraud.

The judgment is affirmed, with costs.

*N. O. Ross* and *R. P. Effinger*, for appellant.

*E. T. Dickey*, for appellee.