**FILED**

Nov 23 2016, 8:34 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

Eric D. Orr
Berne, Indiana

ATTORNEY FOR APPELLEE

Joseph M. Johnson, II
Decatur, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Benjamin Sheetz, <br> *Appellant-Respondent,* <br><br> v. <br><br> Ronnie Sheetz, <br> *Appellee-Petitioner.* | November 23, 2016 <br><br> Court of Appeals Case No. <br> 01A05-1601-DR-80 <br><br> Appeal from the Adams Circuit Court <br><br> The Honorable Chad E. Kukelhan, Judge <br><br> Trial Court Cause No. <br> 01C01-1405-DR-44 |

**Vaidik, Chief Judge.**

# Case Summary

While Benjamin Sheetz ("Husband") and Ronnie Sheetz ("Wife") were married and Husband was in prison, Wife got pregnant by another man. Nevertheless, Husband agreed to raise the child as his own and did so for twelve years. He also told Wife not to contact the biological father, not to seek support from him, and not to institute paternity proceedings. Wife later filed for divorce, and at the final hearing, the parties entered into evidence a stipulation that although the child was born during the marriage, Husband is not the child's biological father. The trial court nonetheless ordered Husband to pay support for the child, and Husband now appeals.

Under these circumstances where Husband told Wife when she was pregnant that he would raise the child as his own (and he did so for twelve years), Husband told Wife not to tell the biological father, not to seek support from him, and not to file a paternity action, and Wife relied on Husband's representations in not establishing paternity in the biological father, we find that Husband is equitably estopped from rebutting the presumption that he is the child's biological father. We therefore affirm the trial court.

# Facts and Procedural History

Husband and Wife married in April 2002. Shortly thereafter, Husband was sent to prison. While he was in prison, Wife became pregnant by another man. When Wife was about twelve weeks pregnant, she told Husband that she was pregnant by another man. At first, Husband was upset. Wife offered to file for

divorce, but Husband said no. They eventually agreed to tell everyone that she became pregnant during a conjugal visit, that she would not tell the biological father that she was pregnant with his child, and that they would raise the baby "as [their] own child." Tr. p. 72, 142.

[4] Shortly after Husband's release from prison, Wife gave birth to G.B.S. on May 17, 2003. Husband was present at the birth and signed the birth certificate as "father." *Id.* at 78. Husband did not want Wife to contact the biological father, to seek support from him, or to institute paternity proceedings. *Id.* at 77, 143. Husband and Wife then had two more children.

[5] For the next twelve years, Husband held G.B.S. out to the world and to G.B.S. as his child. Of their three children, Husband had the "closest relationship" with G.B.S. *Id.* at 76. When discussing the possibility of divorce in 2010, Wife asked Husband if they should tell G.B.S. that Husband was not his biological father, and Husband said "whether [they] were married or divorced he was [G.B.S.]'s dad[,] period." *Id.* at 147.

[6] Wife filed for divorce in May 2014 and claimed that the three children were children of the marriage. Appellant's App. p. 26. Husband did not object to Wife's claim that G.B.S. was a child of the marriage. The trial court then entered provisional orders for Husband to pay child support for all three children. Again, Husband did not object to paying child support for G.B.S.

[7] The week before the September 2015 final hearing, Wife, upon the advice of G.B.S.'s counselor, told G.B.S. that Husband was not his biological father. At

the final hearing, Husband and Wife admitted into evidence the following stipulation:

> [Husband and Wife] stipulate and agree that [Husband] is not the natural father of [G.B.S.], who was born during the marriage of the parties. [Wife], by so stipulating, is not waiving the right to seek child support for the benefit of said child.

*Id.* at 52. Wife testified that she knows the name of G.B.S.'s biological father but that it had been "a long time" since she had had any contact with him and that she did not know where he lives. Tr. p. 108.

[8] In dissolving the parties' marriage, the trial court entered findings and conclusions. Specifically, the trial court found that Husband induced Wife "to forego establishment of paternity and child support for [G.B.S.] from his biological father, and promised that he would provide support for him." Appellant's App. p. 15. Also, the court found that Wife "firmly believed that both she and Husband would be responsible for [G.B.S.]." *Id.* Accordingly, the court concluded that Husband was "estopped from denying his obligations to [G.B.S.]" because "[t]o hold otherwise would be unjust" and "an injustice to a young man who was led to believe that [Husband] [was] his father when he is not." *Id.* (quotation omitted). The court therefore ordered Husband to pay child support for G.B.S. In addition, the court awarded custody of the three children to Wife. While the parties were separated, the court had issued a no-contact order that prohibited Husband from having contact with Wife and the three children. The court therefore deferred the issue of Husband's parenting

time of the three children "until such time that the No Contact Order is terminated." *Id.* at 21.

[9] Husband now appeals.

# Discussion and Decision

[10] Husband contends that the trial court erred in ordering him to pay child support for G.B.S. because even though G.B.S. was born during his marriage to Wife, G.B.S. is not his biological child.

[11] The trial court entered findings and conclusions in this case sua sponte. In such a case, the specific findings control only with respect to issues they cover, and a general-judgment standard applies to issues outside the findings. *In re Marriage of Sutton,* 16 N.E.3d 481, 484-85 (Ind. Ct. App. 2014). The trial court's findings or judgment will be set aside only if they are clearly erroneous. *Id.* at 485. A finding is clearly erroneous only if there are no facts or inferences drawn therefrom to support it. *Id.*

[12] A dissolution court must determine whether a child is a child of the marriage for purposes of custody, support, and parenting time. *Russell v. Russell*, 682 N.E.2d 513, 517 (Ind. 1997); *see also* Ind. Code art. 31-16 & 31-17. "Child" means "a child . . . of both parties to the marriage" and includes "[c]hildren born out of wedlock to the parties" and "[c]hildren born or adopted during the marriage of the parties." Ind. Code § 31-9-2-13.

[13] For some years, different panels of this Court disagreed as to whom the legislature intended to include as a child of a marriage. *Compare R.D.S. v. S.L.S.*, 402 N.E.2d 30 (Ind. Ct. App. 1980), *with Russell v. Russell*, 666 N.E.2d 943 (Ind. Ct. App. 1996), *trans. granted*. Our Supreme Court, siding with *R.D.S.*, held that the legislature intended that children born out of wedlock as well as children born or adopted during the marriage are children of the marriage "as long as both parties are the natural parents (or adopted the child)." *Russell*, 682 N.E.2d at 517.

[14] In a dissolution action, a man is presumed to be a child's biological father if the man and the child's biological mother are married to each other and the child is born during the marriage. Ind. Code § 31-14-7-1. This presumption can be rebutted by "direct, clear, and convincing evidence." *Myers v. Myers*, 13 N.E.3d 478, 482 (Ind. Ct. App. 2014) (quotation omitted). A stipulation between the parties, by itself, is not enough to rebut this presumption. *See In re Infant R.*, 922 N.E.2d 59, 62 (Ind. Ct. App. 2010), *trans. denied*. The types of evidence used to rebut the marriage presumption for paternity include that the husband was impotent or sterile, the husband was absent during the entire time that the child must have been conceived, and DNA testing. *Myers*, 13 N.E.3d at 482-83.

[15] Here, the parties stipulated that Husband is not the biological father of G.B.S., as Wife became pregnant by another man after Husband was sent to prison. In addition to the parties' stipulation, Husband sent letters to Wife while in prison demonstrating that he was incarcerated when she became pregnant. This

stipulation and evidence establish that Husband is not G.B.S.'s biological father. But this is not the end of the story.

[16] Before G.B.S. was born, Husband told Wife that he would raise G.B.S. as his own child; Husband then signed G.B.S.'s birth certificate and raised G.B.S. as his own child for twelve years—G.B.S.'s whole life. Of Husband and Wife's three children, Husband was closest with G.B.S. Husband also told Wife not to contact G.B.S.'s biological father and not to institute paternity proceedings. To date, no paternity proceedings have been initiated. Under these facts, Husband is estopped from rebutting the presumption that he is G.B.S.'s biological father.

[17] Equitable estoppel is a judicial remedy by which a party may be precluded by his own acts or omissions from asserting a right to which he otherwise would have been entitled or from pleading or proving an otherwise important fact. 28 Am. Jur. 2d *Estoppel & Waiver* § 27 (2011). The doctrine of equitable estoppel presumes that some legal requirement has not been met. *See Schoettmer v. Wright*, 992 N.E.2d 702, 709-10 (Ind. 2013) (finding a genuine issue of material fact as to whether the defendant was estopped from asserting the plaintiff's non-compliance with the Indiana Tort Claims Act's 180-day notice requirement as a defense based on the defendant's insurer's representations to the plaintiff that it could not settle his claim until his treatments were complete); *see also Nolan v. Clarksville Police Dep't*, 60 N.E.3d 1128, 1132-33 (Ind. Ct. App. 2016) (finding a genuine issue of material fact as to whether the defendant was estopped from asserting the plaintiff's non-compliance with the Indiana Tort Claims Act's 180-day notice requirement as a defense based on the defendant's representations to

the plaintiff that formal notice would not be necessary), *trans. pending*; 22A Stephen E. Arthur & Jerome L. Withered, Indiana Practice, *Civil Trial Practice*, § 39.9 (2d ed. 2007) ("The doctrine of equitable estoppel is a judicially-created rule which will relieve a plaintiff of the requirements of a statute of limitations in cases where constructive fraud is present.").[1]

[18] The purpose of equitable estoppel is to preclude a person from asserting a right when he has led another to form the reasonable belief that the right would not be asserted, and loss or prejudice to the other would result if the right were asserted. 28 Am. Jur. 2d at § 28. The doctrine of estoppel springs from equitable principles, and it is designed to aid in the administration of justice where, without its aid, injustice might result. *Levin v. Levin*, 645 N.E.2d 601, 604 (Ind. 1994). This doctrine is not limited to circumstances involving an actual or false representation or concealment of an existing material fact. *Id.* Rather, equitable estoppel is a remedy available if one party through his course of conduct knowingly misleads or induces another party to believe and act upon his conduct in good faith without knowledge of the facts. *Id.*; *see also* 28 Am. Jur. 2d at § 27 ("Equitable estoppel serves to forbid one to speak against his . . . own act[s], representations, or commitments communicated to another who reasonably relies upon them to . . . her injury.").

---

[1] Contrary to the dissent's claim that there can be no equitable remedy in this case because the legislature has addressed this area of the law, the legislature cannot reject equitable estoppel because it is a judicially created rule that seeks to prevent injustice to a party from the requirements of the law.

[19] Here, Husband induced Wife to believe that he would raise and support G.B.S. as his own child (and Husband did so for twelve years). Wife reasonably believed that Husband would not challenge his paternity of G.B.S. and then relied upon Husband's promise in not filing a paternity action against G.B.S.'s biological father. Indeed, Wife's opportunity to establish paternity in G.B.S.'s biological father has long passed. *See* Ind. Code § 31-14-5-3(b) (providing that "[t]he mother" must file a paternity action "not later than two (2) years after the child is born"; although there are exceptions, none of them likely apply here).[2] To avoid injustice, Husband is equitably estopped from rebutting the presumption that he is G.B.S.'s biological father.

[20] Although our Supreme Court has not applied the doctrine of equitable estoppel to a case with the same facts that are before us, it has applied the doctrine to prevent a husband from denying his obligations to his non-biological child. In *Levin*, husband, who was sterile, and wife decided to use artificial insemination in order to have a child. The procedure was successful, and wife became pregnant and gave birth. Husband and wife were listed as parents on the birth certificate. For ten years, husband supported the child and held him out as his own. The couple then divorced, and the divorce decree included the child as a

---

[2] Although Wife could file a paternity action as G.B.S.'s next friend, *see* Ind. Code § 31-14-5-2(a), Wife's personal right has been extinguished by the passage of time resulting from Husband's representations. In any event, even if Wife filed a paternity action as G.B.S.'s next friend, the likelihood of success is diminished because Husband insisted that G.B.S. be raised as his own. At this point, more than thirteen years have passed since G.B.S. was born. Although Wife testified that she knows the name of the biological father, she has not had any contact with him in "a long time" and does not know where he lives.

child of the marriage and required husband to pay child support. Five years later, husband filed a motion for relief from judgment under Indiana Trial Rule 60(B), requesting the trial court to vacate its child-support order because the child was not his biological child.

[21] On appeal, our Supreme Court noted that husband induced wife to go forward with the artificial insemination and consented both orally and in writing to the procedure. As such, husband promised to become the father of the resulting child and to assume his support. Wife relied in good faith upon husband's actions and "consequently bore a child for which she believed both she and [husband] would be responsible." *Levin*, 645 N.E.2d at 605. Moreover, the Court noted that husband held the child out as his own for fifteen years. And he made no objection to declaring the child a child of the marriage in the dissolution decree. Accordingly, the Court held that husband was equitably estopped from denying his child-support obligation. *Id.* at 604. "To hold otherwise would be unjust." *Id.* at 605.[3]

[22] *Russell,* decided before *Levin,* also provides support for applying equitable estoppel here. In *Russell,* our Supreme Court approvingly cited an equitable-estoppel case from Montana:

---

[3] We disagree with the dissent that a deciding factor for the *Levin* Court was that the husband did not challenge his status as father until after the divorce decree was entered. If that were the determining factor, the Court could have decided the case by applying res judicata or waiver. It did not.

> [I]t is well within the discretion of the trial court to withhold
> approval until paternity has been established in another man. *See
> In re Marriage of K.E.V.,* 883 P.2d 1246 (Mont. 1994) (court
> applied *equitable estoppel* to prevent mother from denying paternity
> of husband where mother was not seeking to establish paternity
> in another man; court reiterated that the holding would not bar
> biological father or child from establishing paternity in father).

*Russell*, 682 N.E.2d at 518-19 (emphasis added). We acknowledge that *Russell* cited *R.D.S.* favorably and *R.D.S.* determined that the doctrine of equitable estoppel cannot be used to enter a child-support order against a non-biological and non-adoptive husband.[4] However, *Russell* did not address the equitable-estoppel aspect of *R.D.S.*; rather, as explained above, *Russell* recognized that *R.D.S.* "as a matter of grammar" correctly interpreted "child" as used in Indiana Code section 31-9-2-13. *Id.* at 516.[5]

---

[4] To the extent that *R.D.S.* and *Cochran v. Cochran*, 717 N.E.2d 892 (Ind. Ct. App. 1999), *trans. denied*, hold that the doctrine of equitable estoppel can *never* be applied to cases like the one before us, we disagree with those decisions.

[5] We disagree with the dissent that *Snow v. England*, 862 N.E.2d 664 (Ind. 2007), and *State ex rel. Hight v. Marion Superior Court*, 547 N.E.2d 267 (Ind. 1989), rejected equitable estoppel in this situation. *Snow* does not address equitable estoppel; instead, it reiterates the well-established principle that in loco parentis alone does not establish a support obligation after a relationship ends.

Equitable estoppel also was not at issue in *Hight*. There, husband was not the biological father of the child but married wife with full knowledge that she was pregnant, allowed his name to be placed on the child's birth certificate, and held the child out as his own. Wife filed for divorce after two years of marriage, and the dissolution court ordered husband to pay child support and awarded him visitation with the child. Five years after the divorce, husband filed petitions to modify visitation and for an order to appear and show cause based on wife's wrongful denial of visitation with the child. Wife filed a motion to dismiss claiming that the trial court lacked subject-matter jurisdiction to address husband's petitions because the child was not a child of the marriage. Our Supreme Court held that wife should have argued that the child was not a child of the marriage in the dissolution case—and had she done so the trial court's order "would have been subject to attack," *Hight*, 547 N.E.2d at 269—but because she did not do so, she waived the issue. The Court did not directly address equitable estoppel.

[23] Moreover, public policy supports applying equitable estoppel here, because if not, G.B.S. essentially would be left without a father.[6] Recognizing this concern, *Russell* acknowledges that a trial court can withhold approval of a stipulation from a divorcing husband and wife that a child is not a child of the marriage until paternity is established in another man in a paternity action collateral to the dissolution action. 682 N.E.2d at 519 ("[S]uch actions may be the only way in which to establish the paternity of a man other than [the] divorcing husband so as to satisfy the dissolution court that the child is not a child of the marriage and permit the divorce to proceed.").[7]

[24] Applying the principles of equitable estoppel requires the good judgment of the factfinder looking at the circumstances of each case. Under the circumstances of this case where Husband told Wife when she was pregnant that he would raise G.B.S. as his own (and he did so for twelve years), Husband told Wife not to tell the biological father, not to seek support from him, and not to file a

---

[6] To be sure, public policy also favors requiring a biological father to pay support for his child. We do not disagree with it. While the application of this policy is sound in most cases, this is not the typical case. Husband voluntarily assumed the responsibility to parent his child, Wife did not file a paternity action for twelve years in reliance on this promise, and the location of the biological father is unknown. When faced with two competing policies, under the facts of this case the policy of not making a child fatherless prevails.

This is not the first time that the policy favoring requiring support from the biological father has given way to other considerations. For example, in *In re Paternity of R.M.*, 939 N.E.2d 1114 (Ind. Ct. App. 2010), we recognized that the doctrine of laches could apply to prevent the biological father from establishing paternity when he knew that he could have been the biological father yet he waited a long period of time to claim his paternity. In other words, the policy of requiring the biological father to pay support did not override the right of the child to recognize the man who raised him as his father.

[7] We are confident here that the trial court would not have accepted the parties' stipulation had it known that such acceptance meant that G.B.S. would be fatherless. Therefore, even if equitable estoppel did not apply, we would remand this case to the trial court for it to withhold acceptance of the parties' stipulation until paternity was established in the biological father.

paternity action, and Wife relied on Husband's representations in not establishing paternity in the biological father, Husband is equitably estopped from rebutting the presumption that he is G.B.S.'s biological father.[8] We therefore affirm the trial court.[9]

Affirmed.

Baker, J., concurs.

Najam, J., dissents with separate opinion.

---

[8] To the extent that Husband is allowed parenting time with the other two children once the no-contact order is terminated, he is entitled to parenting time with G.B.S.

[9] We also affirm the trial court's order that Wife is not required to reimburse Husband for the amounts he paid with respect to a Chrysler Town and Country and a Chevrolet Impala. Although the provisional orders provided that Wife was responsible for these expenses, Wife testified that Husband voluntarily agreed to pay them. Because the trial court expressly relied on Wife's testimony when it found that Wife is not required to reimburse Husband for these expenses, *see* Appellant's App. p. 19, its judgment on this issue is not clearly erroneous.

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Benjamin Sheetz, | Court of Appeals Case No. |
| *Appellant-Respondent,* | 01A05-1601-DR-80 |
| v. | |
| Ronnie Sheetz, | |
| *Appellee-Petitioner.* | |

**Najam, Judge, dissenting.**

I respectfully dissent. The majority opinion that "Husband is equitably estopped" from claiming that G.B.S. is not a child of the marriage is contrary to law. *See* Slip op. at 9. The Dissolution of Marriage Act as well as precedent of the Indiana Supreme Court and this court have established that a child support order in a dissolution of marriage can be entered only for a child of both parties to the marriage. Indiana does not recognize equitable estoppel, adoption by estoppel, or *in loco parentis* as grounds for a child support order. That is, there is no equitable paternity in Indiana. The dissolution court erred when it ordered Husband to pay child support for a child who is neither his biological child nor

his adopted child and who is, therefore, not a child of both parties to the marriage.[10]

### *Under the Dissolution of Marriage Act a "Child of Both Parties to the Marriage" is a Term of Art that Refers only to Natural and Adoptive Parents*

[27] The Dissolution of Marriage Act plainly states that the term "child" means "a child or children of both parties to the marriage." Ind. Code § 31-9-2-13 (2015). Thus, the meaning of "child" under the Act is unambiguous and, as our supreme court has said, Indiana's dissolution law governs only "children of both parties to the marriage." *Snow v. England (In re Snow)*, 862 N.E.2d 664, 668 (Ind. 2007) (citing I.C. § 31-9-2-13). The term "children of both parties to the marriage" is "a term of art that refers only to natural and adoptive parents." *Id.* That is, "child" refers to "children born or adopted during the marriage—as long as both parties are the natural parents (or adopted the child)." *Russell v. Russell*, 682 N.E.2d 513, 516-17 (Ind. 1997) (agreeing with, among other cases, *R.D.S. v. S.L.S.*, 402 N.E.2d 30 (Ind. Ct. App. 1980)). This was also true under Indiana's divorce statutes prior to the Dissolution of Marriage Act. *See Pilgrim v. Pilgrim*, 118 Ind. App. 6, 13, 75 N.E.2d 159, 162 (1947) ("[a]n order for [the] custody and support" of a child not born of the marriage "would have been improper. The statute . . . refers only to the children of the marriage.") (discussing Burns' Ind. Statutes Ann. § 3-1219 (1933)).

---

[10] I agree with the resolution of the vehicle expenses in footnote 9 of the majority opinion. *See* Slip op. at 13 n.9.

[28]   In *Russell*, our supreme court explained that the requirement that a child be a child of both parties to the marriage is grounded in public policy. 682 N.E.2d at 517 n.7. Namely, the proper identification of parents and child is the predicate for both parental rights and parental obligations, including "the just determination of child support." *Id.* The court concluded that public policy disfavors a support order against a man who is not the child's father. *Id.* (citing *In re S.R.I.*, 602 N.E.2d 1014, 1016 (Ind. 1992)). As the court said in *Pettit v. Pettit*, "the obligation of a parent to provide support for a child 'is founded in *nature*, not in contract.'" 626 N.E.2d 444, 445 (Ind. 1993) (quoting *Lower v. Wallick*, 25 Ind. 68, 73 (1865) (emphasis in original)). That is, a child support obligation arises out of a natural duty of the parent, which is grounded in the unique, natural relationship of parent and child. *Id.* And when a man adopts a child in the manner provided by law, he assumes that duty.

[29]   Here, there is no dispute that Husband is not the biological or adoptive father of G.B.S. To the contrary, the parties stipulated to the dissolution court that Husband was neither. And the parties' stipulation was corroborated by letters Husband wrote to Wife from prison that demonstrated that he was incarcerated at the time she became pregnant. *See, e.g.*, *Myers v. Myers*, 13 N.E.3d 478, 482 (Ind. Ct. App. 2014) (noting that a husband may rebut the presumption of his paternity where the evidence shows that he "was absent so as to have no access to the mother" during conception). The evidence clearly and convincingly demonstrates that G.B.S. is not a child of both parties to the marriage. *See id.*

The dissolution court correctly found as much, and the majority does not question the court's finding.

[30] Nonetheless, after finding that G.B.S. is not a child of both parties to the marriage, the dissolution court ordered Husband to pay support for G.B.S. That order exceeds the dissolution court's statutory authority. *See* I.C. § 31-9-2-13. As our supreme court held in *State ex rel. Hight v. Marion Superior Court*, "the trial court order regarding child support and visitation, based on [husband's] acknowledgment of the child who he did not father, would have been subject to attack as *exceeding the authority granted by the statutes*." 547 N.E.2d 267, 269 (Ind. 1989) (emphasis added).

[31] Under the Dissolution of Marriage Act paternity and support are indivisible. Paternity is a condition precedent to child support under the Act and must be satisfied before a child support order may be entered. A support order in a dissolution action against a man who is not the father of the child violates the Act and the policies underlying the Act. *Russell*, 682 N.E.2d at 517 n.7.

## There is No Equitable Adoption in Indiana

[32] The Indiana Supreme Court and this court have rejected equitable estoppel as an attempt to circumvent the statutory requirement that support orders be entered only against biological or adoptive fathers.[11] For example, in *R.D.S.*,

---

[11] We have also considered and rejected the concept of equitable adoption in the context of intestate succession. Namely, in *Lindsey v. Wilcox*, we held that "no compelling reason surfaces to create a judicial

the husband and wife met when the wife was visibly pregnant, and they married a few months later. After four years of holding the child out as his own, upon the dissolution of their marriage the dissolution court ordered the husband to pay support for the child.

[33] We reversed and held that the support order was not authorized because the child was not a child of both parties to the marriage. *R.D.S.*, 402 N.E.2d at 34. In reaching our holding, we explicitly rejected the following theories under which a husband in such circumstances might be ordered to pay child support: equitable adoption, equitable estoppel, *in loco parentis*, and an implied contract by the husband to provide support. *Id.* at 32-33. In rejecting each of those theories, we made clear that "the provisions of the statute" and "legislative intent," not equity, control the dissolution court's authority to enter a child support order. *R.D.S.*, 402 N.E.2d at 34. Likewise, in *Cochran v. Cochran*, we recognized that "paternity by estoppel" is not a valid basis for a child support order in Indiana. 717 N.E.2d 892, 894-95 (Ind. Ct. App. 1999). Similarly, in *Friar v. Taylor*, we held that equity cannot serve as a basis for a child custody order under the Dissolution of Marriage Act. 545 N.E.2d 599, 600-01 (Ind. Ct. App. 1989).

---

doctrine [of equitable adoption] to serve the same purpose when the statutory schemes of probate or adoption seem quite adequate." 479 N.E.2d 1330, 1332-33 (Ind. Ct. App. 1985), *trans. denied*.

[34]     In *Hight*, the Indiana Supreme Court expressly agreed with this court's reasoning and conclusion in *R.D.S.* and said:

> In *R.D.S.*, the Court of Appeals held that a child must be a child of both parties to the marriage to come within the definition of "child" in [the Dissolution of Marriage Act] and to furnish the basis for child support. *R.D.S.*, 402 N.E.2d at 34. As a consequence, *the* R.D.S. *court rejected as a basis for imposing child support the husband's acknowledgement or equitable adoption of a child he did not father.* *Id.* In the present case, the trial court order regarding child support and visitation, based on [husband's] acknowledgment of the child who he did not father, *would have been subject to attack as exceeding the authority granted by the statutes.*

547 N.E.2d at 269 (emphases added; footnote omitted).

[35]     In other words, in *Hight* our supreme court agreed with *R.D.S.* that Indiana does not recognize "equitable adoption" and that a support order based on equity would "exceed[] the authority granted" by the Dissolution of Marriage Act. *Id.* Likewise, as Judge Baker wrote for this court in *Seger v. Seger*, "there is no equitable adoption in this state." 780 N.E.2d 855, 858 (Ind. Ct. App. 2002). Rather, adoption is controlled by statute. *See* I.C. §§ 31-19-1-1 to -29-6.

### *In Loco Parentis* is an Insufficient Basis for a Support Order

[36]     "*In loco parentis* means 'in the place of a parent.'" *In re Snow*, 862 N.E.2d at 666 (quoting *Black's Law Dictionary* 803 (8th ed. 2004)). In *In re Snow*, our supreme court held, as we had in *R.D.S.*, that the status of *in loco parentis* is an insufficient

basis for imposing a child support order on a stand-in parent. *Id.* at 667; *see*

*R.D.S.*, 402 N.E.2d at 32-33. As the court in *In re Snow* explained:

> we see a number of public policies that militate against imposing
> a child support obligation on stand-in parents, such as custodians
> and guardians. First, we note that *Indiana policy disfavors entering*
> *a support order against adults who are not natural parents. See Fairrow*
> *v. Fairrow*, 559 N.E.2d 597 (Ind. 1990) (statutes and sociological
> evidence favor supporting parent/child relationship; support
> order against adult known not to be parent is unjust).
>
> Second, it makes little sense to require child support from a
> person *in loco parentis* when that status is temporary in nature and
> essentially voluntary. The stand-in parent would effectively be
> able to choose whether or not he or she should be required to pay
> child support simply by choosing to continue or discontinue the
> relationship. It also seems unwise to create a layer of financial
> risk for adults who voluntarily provide financial and emotional
> support to children not their own. Lastly, it is difficult to
> imagine imposing parallel obligations on the institutions (like
> juvenile courts or universities) to which *in loco parentis* is
> commonly deployed. Therefore, *we hold that when a relationship of*
> in loco parentis *exists, that status alone is an insufficient basis for*
> *imposing a child support obligation on the stand-in parent.*

862 N.E.2d at 667 (emphases added). Here, the facts disclose a classic case of

an *in loco parentis* relationship, as Husband voluntarily made himself the stand-

in parent over G.B.S. during his marriage to Wife. The majority errs when it

holds that a husband creates a lasting support obligation when he voluntarily

assumes financial and emotional support over a child not his own. *In loco*

*parentis* does not establish paternity, and a child support order cannot be entered

against a man who has only an *in loco parentis* relationship to the child. *See id.*

In sum, Husband cannot be equitably estopped from claiming that G.B.S. is not a child of the marriage, and to hold otherwise is contrary to the plain meaning of the Dissolution of Marriage Act and exceeds the authority granted to our dissolution courts under the Act. A support order based on either an adoption by estoppel or an *in loco parentis* relationship violates the Act and the precedent of our supreme court and this court. And I cannot agree with the suggestion that our supreme court in *Russell* "did not address the equitable-estoppel aspect of *R.D.S.*" Slip op. at 11. Rather, in *Russell*, our supreme court stated that this court's opinion in *R.D.S.* was "correct," and, when *Russell* and *R.D.S.* are read together, it is clear that *Russell* approved of this court's rationale in *R.D.S. See Russell*, 682 N.E.2d at 516-17. Regardless, it is clear from our supreme court's opinions in *Hight* and *In re Snow* that the court has approved of our conclusion in *R.D.S.* that equity does not supplant the statutory scheme.

### *Wife Has Not Stated a Claim for Equitable Relief*

In any event, Wife has not stated a claim for equitable relief. As a threshold matter, to state a claim for equitable relief a party must prove that her remedies at law are inadequate. *Martin v. Heffelfinger*, 744 N.E.2d 555, 558-59 (Ind. Ct. App. 2001). "A legal remedy is adequate where it is as practical and efficient to the ends of justice and its prompt administration as the remedy in equity." *Id.* at 559.

Citing Indiana Code Section 31-14-5-3(b), the majority opinion first contends that Wife is entitled to equitable relief because her "opportunity to establish paternity in G.B.S.'s biological father has long passed" and that, "[t]o avoid

injustice, Husband is equitably estopped" from claiming that G.B.S. is not a child of the marriage. Slip op. at 9. But then, citing Indiana Code Section 31-14-5-2(a), the majority concedes in a footnote that Wife can still "file a paternity action as G.B.S.'s next friend." *Id.* at 9 n.2.

[40] Wife testified before the dissolution court that she knows who G.B.S.'s biological father is, and she identified him by name. Wife, acting on G.B.S.'s behalf, may still establish paternity in G.B.S.'s biological father and, thus, she has an adequate remedy at law and cannot state a claim for equitable relief. Our supreme court has explained when equitable relief is unnecessary and unavailable to circumvent a statute, stating as follows:

> Equity has the power, where necessary, to pierce rigid statutory rules to prevent injustice. But where substantial justice can be accomplished by following the law, and where the parties' actions are clearly governed by the rules of law, equity follows the law. In this case the rights of the parties are clearly governed by the statute; and no injustice will result from following such statute. Therefore, equity in this case, must follow the law, there being no equitable reason for not doing so.

*Metro. Sch. Dist. of S.W. Parke v. Vaught*, 249 Ind. 412, 417, 233 N.E.2d 155, 158 (1968) (citation omitted).

[41] Equity follows the law. Here, the rights of the parties are clearly governed by the Dissolution of Marriage Act. And because Wife may still bring a paternity action on G.B.S.'s behalf, she cannot state a claim in equity that would

circumvent the Act. As such, Wife has an adequate remedy at law and equitable relief is unnecessary.

[42] We may not redefine the term "child," a term already defined by our legislature. Our courts have repeatedly rejected equity as a means to overcome legislative intent. As our supreme court has explained, "there can be no inherent equity jurisdiction in the face of a statute specifically limiting the court's jurisdiction in an otherwise valid statutory proceeding." *State ex rel. Root v. Circuit Ct. of Allen Cty.*, 259 Ind. 500, 506-07, 289 N.E.2d 503, 507 (Ind. 1972); *see also Ryan v. Ryan*, 972 N.E.2d 359, 370 (Ind. 2012) ("We think it unlikely that a court can invoke equity to overcome the mandate of a statute . . . ."). Here, there can be no equitable remedy because our legislature has clearly and unambiguously occupied the field and limited a dissolution court's authority to enter a support order only for a child of both parties to the marriage, and a dissolution court generally has no equity jurisdiction to do otherwise. *E.g.*, *R.D.S.*, 402 N.E.2d at 32-34.

Husband Timely Objected to the Allegation of Paternity

[43] The Indiana Supreme Court and this court have held that under extraordinary circumstances a husband before a dissolution court may be estopped from denying a child support order, but *only* where the husband did not timely challenge his paternity and the dissolution court had previously entered a final order against him. *E.g.*, *Tirey v. Tirey*, 806 N.E.2d 360, 364-65 (Ind. Ct. App. 2004), *trans. denied*. For example, in *Tirey* we held that a dissolution court "has the authority to enter a child support order in a dissolution proceeding against a

non-parent . . . so long as the obligated party agreed to that term and the agreement was not the product of artifice or mistake." *Id.* at 365.

[44] In other words, when a husband does not timely challenge his paternity before the dissolution court, his subsequent challenge is barred by *res judicata* subject only to Trial Rule 60(B) review. As our supreme court stated in *Russell*, a husband is "precluded from *later* challenging [the dissolution court's paternity] determination, except in extraordinary circumstances." 682 N.E.2d at 518 (emphasis added) (citing *Fairrow*, 559 N.E.2d at 600 (holding that a husband was entitled to relief from a support judgment when he obtained "gene testing results [pursuant to an unrelated medical procedure after the entry of dissolution,] which gave rise to the prima facie case for relief . . . independently of court action")).[12]

[45] Here, in ordering Husband to pay support for G.B.S., the dissolution court first concluded that Husband should be equitably estopped under *Tirey* from challenging his paternity. But Husband's procedural posture before the dissolution court is entirely different from the posture of the husband in *Tirey*. In particular, at the time Husband challenged his paternity over G.B.S., there

---

[12] As the majority notes, the court in *Russell* further acknowledged that a mother may be equitably estopped from arguing against her husband's paternity where she was not seeking to establish paternity in another man, her husband had been unaware that he might not be the child's biological father, and he had not challenged his own paternity during the dissolution proceedings. 682 N.E.2d at 518-19 (citing *In re Marriage of K.E.V.*, 883 P.2d 1246 (Mont. 1994)); *see also Myers*, 13 N.E.3d at 482-84 (holding that the mother was barred by laches from challenging the dissolution court's final judgment, which had established husband's paternity, in a subsequent proceeding). But those circumstances simply do not apply in this appeal.

had been no final judgment against Husband on the dissolution petition. Thus, Wife's argument on appeal that Husband's failure to object to the assertions of paternity in her petition for dissolution or in the court's provisional orders is not well-taken in that neither the petition nor the provisional orders are equivalent to a final judgment. *See, e.g.*, I.C. § 31-15-4-13 ("The issuance of a provisional order is without prejudice to the rights of the parties or the child as adjudicated at the final hearing in the proceeding."). Husband timely objected to Wife's allegation of paternity. Accordingly, the dissolution court erred when it relied on *Tirey*.

### *Levin v. Levin* Is Inapposite

[46] Neither does *Levin v. Levin* apply in this case. Unlike in *Levin*, here Husband did not induce Wife to become pregnant by another man. Rather, she became pregnant through intercourse with another man without Husband's prior knowledge or consent.

[47] In *Levin* our supreme court recognized that equity may apply to estop a husband from denying paternity in a dissolution action where he had induced his wife to become pregnant by a third party. 645 N.E.2d 601, 605 (Ind. 1994). But nothing in *Levin* suggests that our supreme court sought to abrogate *R.D.S.* or *Hight*, and the subsequent decisions in *Russell*, *Cochran*, and *In re Snow* continued to reject equity as an appropriate basis for a child support order against a nonbiological and nonadoptive husband.

[48] Indeed, *Levin* is easily distinguished both substantively and procedurally from this case. In *Levin*, the Indiana Supreme Court affirmed our court's opinion and concluded that the husband was equitably estopped from denying paternity on the grounds that he had induced the wife to become pregnant, and the court held that "as in the case of adoption" a child born under such circumstances is a "child of the marriage" under the Dissolution of Marriage Act. *Id.* Further, in *Levin*, as in *Tirey*, the husband did not object when the dissolution court found that the child was a child of both parties to the marriage and entered the dissolution decree. It was only in a subsequent Trial Rule 60(B) relief from judgment proceeding that the husband first raised the issue of whether the child conceived with the sperm of a third party donor was a child of both parties to the marriage. While the child in *Levin* was a child of both parties to the marriage, here G.B.S. is not a child of both parties to the marriage.

[49] The facts and procedural posture in this case are not aligned with *Levin* but with *R.D.S.*, in which the husband knew he was not the biological father of his already-pregnant wife's child yet held himself out as such for several years before disclaiming paternity during dissolution proceedings. Again, after the trial court in *R.D.S.* nonetheless ordered the father to pay support, we reversed and vacated the support order. 402 N.E.2d at 35. We did not remand with instructions that the court maintain the fiction of husband's paternity, despite the evidence, until paternity was properly established in another man. *Id.* The majority here is concerned that G.B.S. will be deemed a *filius nullius*. That term applies in paternity actions, which cannot be used to disestablish paternity.

This is not a paternity action. The only parentage issue in a dissolution of marriage is whether the child is a child of both parties to the marriage. In other words, in a dissolution action a husband is entitled to rebut the presumption of his paternity, and nothing more is required of him.

[50] Again, equity follows the law and cannot be used to *circumvent* the law. Justice Oliver Wendell Holmes, Jr. wrote that "[t]he standards of the law are standards of general application." *The Common Law* 108 (1881). This means that the rule of law applies across the board. And if the law is applied evenly, as our legislature intended, we cannot resort to equity to achieve what we perceive to be a better outcome simply because the law as applied in a particular case may yield an imperfect result. As we stated in *Cochran*, "[w]e are not unsympathetic to [the] argument[] that biology alone does not create a father" but, "'in the end, *such policy questions are the province of the legislature*.'" 717 N.E.2d at 894-95 (emphasis added) (quoting *Russell*, 682 N.E.2d at 517 n.7). Our first responsibility is to follow the plain meaning of the governing statutes. On this subject our legislature has spoken unambiguously and occupied the field with a comprehensive legislative scheme, and there is no legislative void left to be filled by judicial action on these facts.

### Our Legislature Has Rejected the Majority's Reasoning

[51] Our legislature has considered and expressly rejected estoppel and *in loco parentis* as a means to establish paternity. Indiana Code Section 31-14-7-2 clearly states that circumstances where, as here, "with the consent of the child's mother, the man: (1) receives the child into the man's home; and (2) openly

holds the child out as the man's biological child . . . do not establish the man's paternity." Thus, our legislature has already addressed and rejected the majority's reasoning that, on this fact pattern, Husband has assumed a duty to pay support. And our supreme court agrees. An *in loco parentis* relationship "generally may be terminated at any time." *In re Snow*, 862 N.E.2d at 666. "[A]bsent an intent to continue *in loco parentis*, a stand-in parent does not have a duty to support following a marriage dissolution." *Id.* at 666-67.

### *Conclusion*

This court's equity jurisdiction is not a license to disregard the unmistakable and unambiguous intent of our legislature and the plain meaning of a "child or children of both parties to the marriage." In effect, the majority has redefined a defined term and usurped a policy question that belongs to the legislature. *See In re Snow*, 862 N.E.2d at 668; *Russell*, 682 N.E.2d at 516-17. Indeed, the legislature has already rejected equitable paternity. *See* I.C. § 31-14-7-2. The question presented has also been considered and decided by both our supreme court and this court in numerous cases, both under the Dissolution of Marriage Act and under prior law going back at least seven decades. *See, e.g.*, *Pilgrim*, 75 N.E.2d at 162. Neither our legislature nor our courts have recognized adoption by estoppel or paternity by *in loco parentis*. The majority opinion is contrary to Indiana Supreme Court precedent in *Hight*, *Russell*, and *In re Snow* and is a radical departure from our well-settled family law.

Paternity and a duty to pay child support are indivisible. In Indiana, a man's paternity is a condition precedent to a child support order against him. The

majority opinion is contrary to law. The child in this case is not a child of both parties to the marriage. Husband and other Indiana husbands similarly situated have a reliance interest in the certainty afforded by the plain meaning of the statute and well-settled precedent. If the majority opinion stands, it will not only reverse decades of precedent but will also introduce uncertainty into child support determinations. In order to avoid the risk of an "equitable" child support order, a husband who knows or suspects that his wife's child is not his child but is the child of another man will now be encouraged, if not compelled, to disavow paternity as soon as possible and rupture the marriage rather than to keep the marriage and family intact.

[54] Thus, I respectfully dissent.